PETER J. KEEFE, Appellee, v. FRED S. CROPPER, Appellee, et al., Appellants.

MORTGAGES: Purchase Money—Priority. Principle recognized that
1  ordinarily a purchase-money mortgage is prior in right to previously rendered judgments.

JUDGMENT: Lien—Priority Over Purchase-Money Mortgage. A sher-
2  iff's deed based on a judgment antedating a purchase-money mort-gage is superior to the lien of such mortgage when the purchaser at the execution sale on the judgment neither knew that the mort-gage was for the purchase money nor was apprised of such fact by any recorded instrument.

*Appeal from Black Hawk District Court.*—E. B. STILES, Judge.

DECEMBER 15, 1922.

OPINION ON REHEARING JUNE 22, 1923.

REHEARING DENIED DECEMBER 14, 1923.

ACTION in equity to foreclose a real estate purchase-money mortgage and determine the priority between adverse claimants to the land mortgaged. The opinion states the facts. The trial court determined the equities to be with the plaintiff mortgagee. The appellant, who is a subsequent grantee of the execution sale purchaser, appeals.—*Reversed.*

*Thomas & Thomas* and *Edwards, Longley, Ransier & Harris*, for appellants.

*McCoy & Beecher*, for appellee.

DE GRAFF, J.—The material facts in this case are not in dispute. The action was originally instituted to foreclose a real estate mortgage, but by amendment to the petition it is alleged that the mortgage is a purchase-money mortgage to secure the unpaid portion of the consideration and prays that the title and interest of the mortgagee be adjudged superior to the title and interest claimed by appellant Potter, whose title as an alleged subsequent purchaser for value, is predicated upon a judgment lien and purchase by execution sale thereunder.

1. MORTGAGES: purchase money: priority.

The chronology of the various transactions involved will make understandable the legal question presented. (1) On January 9, 1917, one Briggs secured a judgment in Black Hawk County, Iowa, against the defendant-purchaser, Fred S. Cropper. (2) On April 24, 1917, plaintiff, Peter J. Keefe, of Benson County, North Dakota, executed and delivered a warranty deed with full covenants to certain real estate situated in Black Hawk County, Iowa, to the said Fred S. Cropper. (3) On April 27, 1917, Cropper executed and delivered to Keefe a mortgage on said real estate to pay the unpaid purchase price thereof. (4) On May 3, 1917, the real estate mortgage was duly recorded. (5) On May 9, 1917, the warranty deed was duly recorded. (6) On June 17, 1917, the real estate was sold on execution by virtue of the judgment lien held by Briggs against defendant Cropper. (7) On September 29, 1917, the certificate of sale was duly issued to Briggs, the purchaser at the execution sale, who assigned same to one E. L. Jones. (8) On September 30, 1918, no redemption having been made, a sheriff's deed was duly executed, conveying said real estate to Jones. (9) By mesne conveyances from Jones the title to said real estate came to the appellant Potter, and each purchaser in the chain of title paid value. Cropper also conveyed title, and by mesne conveyances, his title eventually came to Potter.

The case is not without some difficulty, but by an analysis

of the legal principles involved, we believe a conclusion may be reached.consonant with logic and law.

Our first inquiry may well be directed to the underlying principle of a purchase-money mortgage and the essence of its priority. A purchase-money mortgage is what the term implies, and is predicated on the theory that upon the simultaneous execution of the deed and mortgage the title to the land does not for a single moment rest in the purchaser, but merely passes through his hands and without stopping, vests in the mortgagee. It follows, therefore, that no lien of any character can attach to the title of the mortgagee and that the title and interest has preference over previous judgments against the purchaser-mortgagor. *Laidley v. Aikin*, 80 Iowa 112; *Kaiser v. Lembeck*, 55 Iowa 244; *Stewart v. Smith*, 36 Minn. 82.

2. JUDGMENT: lien: priority over purchase-money mortgage.

The intent to create the mortgage at the time the mortgagor takes the legal title is the element that carries the priority, and when it exists the mortgage in the eyes of equity is a purchase-money mortgage. In the instant case there was such an agreement. Cropper testified that that was the agreement, and there is no contention on the part of appellant to the contrary. Cropper secured the legal title to the real estate in question through his deed from the grantor Keefe, but there existed in the grantor at that time the equitable right to have the mortgage executed.

It will be remembered that the mortgage in question was executed three days subsequently to the transfer of the legal title, and that the deed does not refer directly or indirectly to a contemplated mortgage or to any other reserved right or equity; nor does the mortgage itself contain a recital that it is in fact a purchase-money mortgage. As between the original parties such recitals are immaterial, since in the eyes of equity the lien did exist.

With the rights of a title purchaser who pays value without notice, either actual or constructive, of the outstanding secret equity a different rule must prevail. The mortgage can be defeated only by one acquiring a legal title and an equal equity without notice of the existence of the other equity. A person acquires his equal equity by paying valuable consideration, if he

has no notice of the prior equity. The appellant Potter can have no greater legal right than the judgment-debtor Cropper had in the real estate, and no greater equitable rights than the judgment debtor had unless Potter, or someone from whom he holds, acquired legal title and paid value therefor without notice of the outstanding equitable right. The fact that the purchaser at the execution sale was a *judgment creditor, and not a third person*, makes no difference. A purchaser at an execution sale has the same protection against outstanding equities as any other purchaser.

What did the execution purchaser buy that was subsequently sold to appellant Potter? He bought exactly the same rights as if he had taken by bargain and sale from Cropper, but took in addition the rights of the judgment lien holder on April 24th. The execution purchaser and any subsequent purchaser from him acquired the right to defeat all outstanding equities of which the purchaser had no notice.

We are committed to the doctrine that a purchaser at an execution sale takes free from the outstanding equities of which he had no notice and will take the land discharged of every claim or title whether arising under an unrecorded instrument or a mere equity of which he had no notice at the time of the purchase. *Gower v. Doheney*, 33 Iowa 36; *Weaver v. Carpenter*, 42 Iowa 343.

Under this view a purchaser at a sheriff's sale stands in relation to the recording statute as though he were a purchaser at the same date from the judgment-debtor himself. A sheriff's deed is a statutory conveyance and stands upon the same basis as a conveyance by the owner.

There is but one controlling question in this case. Did the appellant Potter take with notice of any outstanding equity in the appellee Keefe by reason of the recorded instruments? Was the appellant Potter derelict in the duty of making inquiry that rests on the reasonably prudent person under similar circumstances?

There can be no dispute that the record of the mortgage was notice of the existence of the mortgage to all of the purchasers. Consequently there were no purchasers without notice unless the

fact that they did not know that the mortgage was given for pur-
chase money makes each a purchaser for value without notice.

Did the recorded mortgage put the purchaser on inquiry?
If a person is put on inquiry he is bound to investigate.   In
law he knows all that he could ascertain by an inquiry.   An
execution purchaser is put on inquiry by an instrument properly
indexed and recorded by the recitals or matters therein that
would put a reasonable person upon inquiry and he is bound
to take notice of all facts that he might have learned by pursu-
ing the path thus indicated.   *Thomas v. Kennedy,* 24 Iowa 397;
*Loser v. Plainfield Sav. Bank,* 149 Iowa 672.

The contention of appellant is that the execution purchaser
"is charged by the record with notice of rights created by the
instruments as recorded, and not with notice arising from facts
surrounding the instruments which were not recorded."

Potter was charged with knowing what the records of Black
Hawk County disclosed and also those facts of inquiry to which
the record directed his attention.   See *Wilson v. Miller,* 16 Iowa
111; *Weare & Allison v. Williams,* 85 Iowa 253; *Anderson v.
Blood,* 152 N. Y. 285 (46 N. E. 493).

In *Day v. Brenton,* 102 Iowa 482 it is said: "The uniform
course of decisions in this state has been to discourage secret
liens and to protect those who invest their money in reliance
upon the integrity of the county records."   See also *Huber v.
Bossart,* 70 Iowa 718.

Potter paid value for the land and it is not claimed that he
had actual notice or knowledge of any outstanding equity.   The
abstract of title disclosed a warranty deed from Keefe to Crop-
per dated April 24, 1917.   This deed on its face conveyed every
title, interest or claim that Keefe owned, warranted the prem-
ises free from incumbrance except a prior mortgage for $6,500,
and expressly stated that the entire purchase price had then
been paid in full.   It also disclosed a judgment in favor of one
Briggs against the purchaser Cropper dated January 9, 1917,.
and execution and sheriff's sale thereunder, the assignment of
the certificate of sale to one Jones, a sheriff's deed and a deed
from the grantee Jones to one Otte dated October 21, 1918.
Therefore, when Potter purchased from Otte, what was there
on the public records that disclosed that Keefe's mortgage of

$3,900 was a purchase-money mortgage and a superior lien on this land?

Would the reasonably prudent person be justified in concluding that the lien of that mortgage had been terminated by the foreclosure of the prior judgment lien and sale? Potter clearly had the right to rely on the positive statements in the deed. He was justified in believing that Keefe's recitals in the deed were true. Unless it may be said that the recorded instruments directed the attention of the purchaser to the fact that the mortgage might constitute a lien superior to the judgment lien his duty to make further inquiry did not exist, and he was under no obligation to search further.

It is also shown that Keefe not only took back a mortgage three days later on the described parcel of real estate subject to a mortgage of $6,500 previously executed by Keefe, but that it was also subject to a mortgage for $1,500 which Cropper had executed in the interim between April 24 and April 27. If Potter and his antecedent purchaser were justified in assuming that the terms of the Keefe mortgage measured his interest in the real estate then we have reached the end of the story. See *Brown v. Wade*, 42 Iowa 647; *Rogers v. Hussey*, 36 Iowa 664.

The gap that intervened between the giving of the deed and the execution of the mortgage is chargeable to the appellee Keefe. The mortgage itself does not purport to create a lien until April 27, 1917. Keefe is not entitled to enlarge the scope of his mortgage beyond its express terms as against a subsequent purchaser for value without notice. A mortgage lien is created and measured by the contract of the parties supplemented with the rights that equity may create. Keefe undoubtedly had a lien on the property for the unpaid purchase money, but the mortgage created a new and distinct lien. *Koevenig v. Schmitz*, 71 Iowa 175.

When a third person acquires an interest in land in good faith and for value that interest cannot be prejudiced by a secret equity unless he is chargeable with notice of the existence of that equity. Keefe and Cropper alone knew of that equity. The judgment became an apparent lien on April 24, 1917. The mortgage became an apparent lien on April 27, 1917. The superior character of the latter lien in order to be established against a

purchaser for value must be predicated on notice to the purchaser. *Halloway v. Platner*, 20 Iowa 121; *Koch v. West*, 118 Iowa 468. Keefe's failure to place a single recital in either deed or mortgage is the cause of all the confusion in the temple. He was under no legal obligation so to do, but he, as well as the subsequent purchaser is presumed to know the law. His rights are now in conflict with the claim of him who asserts his innocence. It is a sensible rule of law that when a loss occurs and one of two persons must sustain that loss it must be borne by the one whose act of omission or commission made the loss possible. Keefe failed to do what a prudent man would do.

We are not unmindful that some reasons may be placed on the other side of the scales in weighing the facts and circumstances at the time of the purchase by Potter, but upon a full and critical examination of the record and the legal principles involved we are constrained to reverse the decree of the trial court.

The verity of public records are not subject to impeachment for slight or transient reasons. A solemn recital in a deed must be accepted as true and upon which a subsequent purchaser may with safety rely. To hold otherwise a court would penalize an innocent purchaser and reward the person who made possible the loss. The judgment and decree entered is—*Reversed.*

All the justices concur.