ISAAC J. MARKER, Appellee, v. RICHARD S. DAVIS et al.,
Appellants.

**MECHANICS' LIENS:** Priority—Rights of Title Holder Under Contract of Sale. A mechanics' lien holder takes subject to the rights of the legal, recorded title holder, including the rights of such holder under a contract of sale of the land: e. g., the right of the said holder ultimately to receive a mortgage on every part and parcel of the land as security for the entire unpaid purchase price.

**VENDOR AND PURCHASER:** Remedies of Vendor—Waiver of Lien. The execution of a purchase-money mortgage by the purchaser and the acceptance thereof by the vendor displace the theretofore existing vendor's lien for the purchase price.

**MORTGAGES:** Construction—Option to Pay Proportionate Amount—Effect. In a mortgage on several lots, a clause giving the mortgagor the option to pay a ''proportionate amount'' of the principal debt at any time, and have any lot released from the mortgage, does not have the effect of distributing the debt into component parts over the entire number of lots and giving the mortgagee a lien on each lot to the extent of the value thereof only.

**MECHANICS' LIENS:** Priority—Avoidance of Prior Mortgage. A mechanics' lien claimant may not complain of the act of the legal title holder in taking a mortgage on a *part* only of a number of lots, instead of asserting his prior right to a mortgage on *all* the lots, when the mechanics' lien claimant has made no attempt to perfect his lien on any of the lots omitted from the mortgage.

Headnote 1: 27 Cyc. pp. 250, 252.  Headnote 2: 39 Cyc. p. 1838.
Headnote 3: 27 Cyc. p. 1415.  Headnote 4: 27 Cyc. p. 250 (Anno.)

*Appeal from Clay District Court.*—F. C. DAVIDSON, Judge.

JUNE 25, 1925.

REHEARING DENIED SEPTEMBER 25, 1925.

SUIT in equity, to recover the purchase money of certain real estate and to foreclose a purchase-money mortgage therefor. There was a decree for plaintiff, granting less relief than prayed. From such decree the first four named defendants appealed. Thereafter, the plaintiff also appealed.—*Reversed on both appeals.*

*Heald, Cook & Heald,* for appellants.

*H. E. Narey* and *W. B. Bedell,* for defendant Farmers & Merchants Bank of Spirit Lake.

*E. A. & W. H. Morling* and *Cornwall & Cornwall,* for appellee.

EVANS, J.—I. The principal defendant is Jacob J. Welle, vendee of the land. The other defendants were made parties for various reasons. Richard S. Davis was, up to June 30, 1920, the cashier of the Citizens National Bank of Webb, Iowa. The defendant J. P. Grieve was associated with him in a form of partnership. The Farmers & Merchants Bank is holder of a mechanics' lien. The plaintiff charged that he was misled to his injury by a certain misrepresentation and by certain neglect of duty on the part of Richard S. Davis, as cashier of the Citizens National Bank. Damages were prayed against Davis and against the bank, as his principal. Grieve purchased, on behalf of himself and Davis, certain of the property included in the contract of sale between plaintiff and Welle, and plaintiff sought to charge a lien upon such property as against both Davis and Grieve. The Farmers & Merchants Bank is the assignee of a certain claim of mechanics' lien upon the same property. Other named defendants are the wives, respectively, of certain of the defendants already named.

Prior to December 8, 1919, plaintiff, Marker, and defendant Welle had lived for many years in the near vicinity of the town of Webb, in Clay County, Iowa. On such date they entered into a written contract, whereby the plaintiff agreed to sell to Welle for $10,000 a certain parcel of ground, comprising 10 acres, lying adjacent to the platted portion of the town of Webb. Welle was professedly purchasing the property for the purpose of building a home upon a portion of it, and of selling the rest of it. It was also understood that he wished to plat the whole of it into town lots, as an addition to the town of Webb. Welle paid $5,000 of the purchase price, and was to execute a mortgage for the remainder, payable January 1, 1925. In order to enable Welle to carry out his platting scheme, it was agreed that the recording (and perhaps the execution) of the mortgage should be deferred until after the plat had been filed for record. There is some dispute between the parties as to whether both the recording and the execution of the mortgage were to be delayed, or only the recording thereof. Upon the whole record, the dispute is not very material. When these parties had verbally agreed upon their contract, they went together to the Citizens National Bank, and requested Davis, the cashier, to reduce the same to writing for them. He thereupon wrote the contract in accord with their dictation thereof. About one month later, the plaintiff executed a deed prepared by another notary public, and brought the same to Davis, and requested him to hold the same for the purpose of delivery to Welle, and to procure from Welle the mortgage stipulated for, as soon as the plat had been filed of record. To this request Davis assented. Davis held this deed until June 22, 1920, before the same was delivered for record. Up to this time no plats had been filed. The surveyor who had been employed by Welle to do the platting had surveyed the same on April 15, 1920, but had not reduced his survey to the form of a plat. In the meantime, certain correspondence was had between Davis and the plaintiff. In the meantime, also, Welle had commenced the building of his new home thereon. In the latter part of April, Davis transmitted by letter a request by Welle that the plaintiff should accept a mortgage on nine lots, including the lots on which the new house was in course of erection, and that

he permit Welle to withhold the rest of the lots from mortgage, in order that Welle might sell the same. Replying to this letter, the plaintiff requested information as to the location of the nine lots and the location of the new home. This was furnished in a second letter to him by Davis. It is claimed by the plaintiff that, in the second letter written by Davis, he "guaranteed" the security. The plaintiff's case against Davis is predicated in large part on such alleged guaranty. Neither of the letters written by Davis was produced in evidence; but the plaintiff and his wife testified to their alleged contents, the letters themselves having been lost, as claimed. It is also claimed that Davis reported in this letter that Welle was building a house estimated to cost from $12,000 to $14,000; that the basement was already built; that the material was largely upon the ground, and paid for. These statements were all literally true. The plaintiff agreed to accept a mortgage on the nine lots in question, and as a consideration, received an increase of one-half per cent in rate of interest. This arrangement was consummated about the middle of June, 1920. Thereafter, on June 22d, Davis delivered the deed. It should be said also that, on and after January 6, 1920, Marker was a resident of Texas, and was such resident during the correspondence with Davis. Two or three months prior to this time, Davis had handed in his resignation as cashier of the bank, to take effect on June 30th. His relations did cease at that time, and he moved to California. He had no further personal connection with the transaction of the plaintiff. What was thereafter done, was so done by Stewart, the successor to Davis. Welle failed to get his plat on file prior to December, 1920. Immediately thereafter, and on December 28, 1920, Stewart procured the execution of the mortgage provided for in the contract, as modified by the correspondence, and placed the same of record, and sent the same to the plaintiff. Before the execution of the mortgage, the form of mortgage proposed to be presented for execution was sent to plaintiff for his approval, and such approval was obtained. He received the mortgage, duly executed and recorded, without objection. Up to this point the plaintiff had no possible grievance against Davis or the bank. Welle was a man of good credit and of large means. In April, 1920, he had, under

the undisputed testimony, a net worth, over and above his debts, of about $80,000. He had 360 acres of land, worth from $275 to $300 per acre. This land was incumbered for $29,000. Welle owed, in addition thereto, $15,000. He had personal property upon his farm of the value of $25,000. In April, 1921, an itemized statement of his property and indebtedness showed a net worth of about $70,000. What later happened was that the tumbling prices of 1921 and 1922 involved him in financial ruin. The new home, which was estimated to cost $14,000, actually cost $20,000. Of such cost he had paid between $11,000 and $12,000. In 1921, a mechanics' lien was filed for the balance, upon Lots 1 and 2 of Block 2. These lots were part of the nine lots included in plaintiff's security. The plaintiff thereby became menaced with litigation by the mechanics' lien holder. If the mechanics' lien holder is entitled to priority, then, and not otherwise, the plaintiff's security becomes inadequate. That part of the plat not included in plaintiff's mortgage was sold by Welle to various parties. Among the purchasers were Davis and his partner, Grieve. They accepted from Welle a conveyance of several of the lots in partial payment for a farm of 117 acres, which Welle bought of them in 1920. Davis was the brother-in-law of Welle. The general theory of plaintiff's case, as against Davis, is that his alleged misrepresentations or his negligence in attending to the business induced the plaintiff to release a part of his security, and that, therefore, as against Davis, the plaintiff had a right to enforce his original right to a lien on all of the property. This theory was adopted in part in the decree, which made a finding that the plaintiff, without fault on his own part, was induced by the misrepresentations of Davis to surrender a part of his security. The decree did not find that Davis had "guaranteed" the security. The decree adjudged a lien against each lot purchased by Davis and Grieve, to the amount of $200, the estimated value of each lot. The provisions of the decree as to the mechanics' lien will be stated later.

In our search for evidence of misrepresentations by Davis, we have read every line of the record. We find none. The brief of appellee points out none. The argument for appellee is that Davis is the brother-in-law of Welle; that he knew, or ought to have known, that Welle was building a more expensive house

than was warranted, for a town of 300 people, and more than was warranted by Welle's means; that he knew, or ought to have known, that there would be a mechanics' lien filed on the property and its improvement; that he assumed to advise in his own interest, rather than in the interest of the plaintiff, and that his purpose was ulterior; that Welle was in fact insolvent, and Davis knew it and concealed it from plaintiff. The argument is not well taken. There is not a line of evidence that Welle was insolvent within the period of Davis's connection with the transaction. The undisputed evidence is to the contrary. The possibilities of the future were just as obvious to the plaintiff as they were to Davis. If Davis should be presumed to have known the law of mechanics' lien, the same presumption must apply to the plaintiff. Davis sustained no relation of trust to the plaintiff. The plaintiff charged, in his original petition, that Davis was his agent. By an amendment he withdrew that allegation, and disclaimed the agency. He still predicates his argument, however, on the theory of agency and trust. In the making of the original contract, Davis admittedly acted as a mere scrivener. The work was purely gratuitous. Likewise, all that he did later was done as a mere gratuity, and done at the request of the plaintiff. He was not the plaintiff's adviser. He owed him no other duty than to perform the particular acts which had been requested of him, and which he had promised to do. He owed the plaintiff no duty of watchfulness or of foresightedness. The plaintiff's petition has not in terms charged Davis with fraud. The averment is that he was guilty "at least of negligence." In view of the disclaimer of his agency, we are unable to discover from the briefs upon what form of duty such charge of negligence is predicated.

We have already referred to the claim of plaintiff that Davis "guaranteed" the security. Though the decree below did not find such fact, the plaintiff still presses it here. Davis denies that anything of the kind appeared in any letter that he wrote. The burden resting upon the plaintiff to prove the alleged contents of the lost letters is a substantial one. To accept such evidence *pro forma* from an interested witness, or as a matter of course, would be to put a premium upon the loss of instruments. Several letters passed between Davis and the

plaintiff. They are all in the record except such two. If these contained the alleged guaranty, they were the most important of all. The subsequent letters written by the plaintiff himself, which are in the record, including those in answer to the lost letters, give no indication whatever of such alleged guaranty. The claim on its face is an improbable one. Some months later, plaintiff wrote to the bank, complaining of the delay in obtaining his mortgage, and pressed for immediate action. There was no suggestion in the letter that he was relying on anything other than his mortgage for the security. His letters, taken in their entirety, are quite inconsistent with the claim of guaranty. His evidence on the subject impresses us as very unsatisfactory; and in our judgment it should be rejected, as insufficient to justify its acceptance as true.

The decree of the district court necessarily rests upon the assumption that Davis had been guilty of some wrong. The wrong, if any, must have been perpetrated prior to June 22, 1920. If such assumption is not tenable, then there was no warrant for charging any lien upon the lots purchased by Davis and Grieve. The lots were released by the plaintiff to Welle, for the very purpose of enabling a sale thereof. It was of no concern to the plaintiff to whom such sales should be made. It is argued that Davis's relation to the plaintiff was such that he had no right to profit out of the transaction. The answer to this is twofold: He sustained no relation of confidence to the plaintiff, the agency being disclaimed. Furthermore, he made no profit out of the transaction. Under the undisputed evidence, he paid for the lots just what they were worth.

The effect of the decree rendered against Davis was to hold him responsible for a foresight which no one else could be presumed to have. If he must be deemed to have known in 1920 what would happen in 1921 and 1922, then this would put another color upon his representations. He is now being judged by the decree, not by the events existing in June, 1920, but by subsequent events which, in June, 1920, were beyond the range of vision of any modern seer.

In the absence of some wrong committed by Davis, on or prior to June, 1920, there is no basis for liability on his part. We hold that the record does not justify a finding either of mis-

representation or guaranty on his part.

II. The new house built by Welle was upon Lots 1 and 2 of Block 2. The mechanics' lien claim was filed against these two lots for $9,000. The district court held that $1,855 of such claim was not lienable, and reduced the lien to

1. MECHANICS'
LIENS: priority: something in excess of $7,000. The decree
rights of title
holder under  awarded plaintiff the first lien upon these lots,
contract of sale.
and made the mechanics' lien junior thereto. However, it limited the amount of the plaintiff's lien on such lots to the sum of $800, and no more. The mechanics' lien was made junior to this extent, and was made superior to the balance of the plaintiff's claim. From this part of the decree, plaintiff has appealed. The mechanics' lien holder, Farmers & Merchants Bank, has not appealed. The question presented, therefore, by the plaintiff's appeal, is whether the district court, having found that the plaintiff had the prior lien, was justified in reducing such priority to a mere fraction of the purchase price. The record presents no dispute over the amount of purchase price remaining due from Welle to the plaintiff. If the plaintiff had a lien for any of it, he had a lien for all of it. It is argued by the mechanics' lien holder that the plaintiff had *no* lien, because he had distinctly waived it in his contract with Welle, for the purpose of enabling Welle to plat the tract free from incumbrance. If we should deem this argument tenable, it is not available to the mechanics' lien holder on this appeal, because the decree held otherwise, and this defendant has not appealed therefrom. We are of the opinion, however, that the argument is not tenable, and that the district court properly sustained the priority of plaintiff's lien. The real question presented to us on this branch of the appeal is whether the trial court was justified in awarding to plaintiff less than the whole claim. The plaintiff has introduced some confusion into the record by his hesitancy to commit himself definitely as to the nature of his own lien. He purports to sue upon a so-called "equitable mortgage and vendor's lien." The plaintiff has no vendor's lien. A mortgage and a vendor's lien do not dwell in the same house. When the mortgage moves in, the vendor's

2. VENDOR AND
PURCHASER:
remedies of ven-
dor: waiver of
lien.

lien moves out. The only "equitable mortgage" that he has, is the mortgage which he contracted for, and which he subsequently received. Before his mortgage was executed and delivered to him, he had an "equitable mortgage," in the sense that he had an express contract for a mortgage. This contractual right to a mortgage was, in equity, the equivalent of a mortgage, and might properly be deemed an "equitable mortgage," in that equity will enforce a contract for a mortgage as effectively as the mortgage itself. When the mortgage contracted for is actually executed, and delivered to and accepted by the plaintiff, then he has a mortgage in express terms, and not a mere right to one. That is what the plaintiff has in this case, and he has gained nothing by insisting upon the appellation of "equitable mortgage." Inasmuch as his rights are precisely the same, and enforcible in the same jurisdiction, whether the mortgage be equitable or actual, he has not suffered by his terminology. But we must look to the mortgage actually held by him for the measure of equity due him.

The contractor who built the new house, and who filed the mechanics' lien, was Brown. The record presents a confusion of dates as to when the right to a lien attached. The claim filed contained dates as early as January, February, and March. The brief of the mechanics' lien holder fixes the date of beginning of the lien as in April. Let it be so taken. The right to a mechanics' lien then attached to the interest of Welle in the real estate. The plaintiff still held the legal title of record. Welle held the land by contract. The plaintiff held the legal title as security for the purchase price. His record title protected him, as constructive notice to third persons. The mechanics' lien attached to the interest of Welle, and did not rise above it. The claimant was charged with notice of Welle's contract and of its contents. The mechanics' lien claimant, being thus charged with notice of the limited extent of Welle's interest at the outset, continued to be so charged to the end of the transaction. The mechanics' lien, therefore, never took priority as for want of notice. It is argued, however, that, by the express terms of the contract between plaintiff and Welle, the plaintiff was to have *no* lien until after the platting and the filing thereof,

and that, therefore, the mechanics' lien necessarily took priority in this interval. The argument is plausible, but not wholly sound. The very contract *for a lien* created a lien as between the parties. A lien good between the parties was good as against third parties who had notice thereof. Under the statute, Welle's plat would not be accepted for record without a showing of a clear record title. The purpose of the contract proviso was to enable Welle to meet this statutory requirement. The withholding of plaintiff's mortgage from record was effective for all the purposes of the statute. Such arrangement was not unlawful. The plaintiff thereby took the risk of juniority as to any and all third persons who might in the interim acquire interest in the platted lots. To this extent the plaintiff necessarily relied upon the personal responsibility of Welle. Welle, however, was not at liberty to encroach upon the plaintiff's contract lien. On the contrary, he was under obligation to protect it. A failure to do so would have been a breach of the contract on his part. For instance, if in such interim Welle had sold such real estate, in whole or in part, to innocent third parties, he would thereby have breached the mortgage provision of his contract. We deem it clear, therefore, that, as between plaintiff and Welle, the plaintiff had a lien at all times, under the express provisions of his contract, and that his alleged waiver thereof was a qualified one, and for a limited purpose; that such limited purpose did not open the door to the mechanics' lien holder; because his operations began while the original contract was wholly executory, and while the plaintiff still held the record title.

This is the justification of the finding of the decree awarding priority to the plaintiff over the mechanics' lien. The error of the decree was in purporting to limit such priority to the sum of $800. The unpaid purchase price was one sum. Under the contract, it was to be secured by a mortgage upon the whole real estate. The lien thus provided included the entire sum, and applied to every part of the real estate. The plaintiff had a lien for $5,000 upon every acre of the tract. By the subsequent modification of the contract, the plaintiff released a considerable part. This release did not diminish the right of the plaintiff as to the unreleased portion. As to such portion, he still held the

same lien that he held before. The court fixed upon the limitation of $800 as the extent of plaintiff's priority, because such sum was found to be the prior value of the two lots before the house was built thereon. We infer that the court fell into this error in a purported construction of Section 3095 of the Code of 1897. This section is very obscure, if not self-contradictory, in its terminology, as we have had occasion heretofore to point out. Its last sentence appears to be an attempt to clear the confusion and to sum up the various provisions of the section, so far as they apply to the right of mortgage liens existing prior to the creation of a mechanics' lien. Such sentence is as follows:

"In case the premises do not sell for more than sufficient to pay off the prior mortgage or other lien, the proceeds shall be applied on the prior mortgage or other liens."

In *Green v. Saxton*, 196 Iowa 1086, we had occasion to construe this section of the statute in a case very similar in principle to the case at bar. We construed it so as to give full effect to such closing sentence. That case is quite controlling of this branch of the case at bar. At the time of the decree in the case at bar, the opinion in the cited case had been handed down only recently, and had not yet been officially published.

There is another feature of the record which may have influenced the form of the decree, and which is pressed upon us in argument by the mechanics' lien holder. The contract between the plaintiff and Welle provided that the sum of $5,000 was to be payable in 5 years from March 1, 1920, with interest at 5 per cent. It also contained the following proviso:

3. MORTGAGES: construction: option to pay proportionate amount: effect.

"* * * It is further agreed that party of the second part will have the option of paying a proportionate amount at any time on this principal sum and have any portion of the above described tract of land released from the mortgage."

The argument is that the effect of this proviso is to distribute the sum total into component parts, proportionately, over the entire tract, and that, therefore, the plaintiff had a lien upon each acre, or upon each lot, to the amount in value only of such lot. It would follow, therefore, on such theory, that, if Lots 1 and 2 were worth $800, and no more, then plaintiff's lien was limited to such amount. The proviso quoted will not fairly bear

such an interpretation. It purported to be a mere option. It was not binding upon Welle until he exercised it. The plaintiff got no consideration for it unless Welle should exercise it. If Welle should exercise it, the consideration moving to the plaintiff was that it accelerated the payment of his debt *pro tanto*. Welle never exercised it. Therefore there was no acceleration of payment. In other words, the proviso, standing as a mere option, never became operative. It has, therefore, no more present effect upon the contract than if it had been wholly omitted therefrom.

As incidental to the main argument, we have considered the question whether the release by the plaintiff of part of his security in June, 1920, violated any of the rights of the mechanics'

**4. MECHANICS' LIENS: priority: avoidance of prior mortgage.** lien holder, and thereby changed his relative position. It is argued that the proceeds of sale of such released property would have paid plaintiff's debt. Whether the mechanics' lien claimant himself had a right to a lien upon the entire 10-acre tract, is a question to which he does not commit himself in his brief. The most favorable declaration for him would be to answer in the affirmative. Indeed, nothing appears in the record which would have precluded him from asserting a lien upon the entire tract. The release by the plaintiff of a part of the tract did not operate to preclude the mechanics' lien claimant from filing his lien thereon. He finished his contract on October 23, 1920. He filed no claim for a lien until June, 1921. He confined his claim for lien to Lots 1 and 2. If thereby he lost his right as against the remainder of the tract, he did so by his own voluntary act, and not by reason of plaintiff's release, one year previous.

We reach the conclusion, therefore, upon this branch of the case, that the plaintiff's priority of lien extends to the full amount of his debt, upon each and all of the nine lots included in his mortgage. Notwithstanding that his mortgage provides for 5½ per cent interest, the computation of the sum at 5 per cent interest, as made in the decree, will stand, as being in accord with his pleading.

Upon the appeal of Davis and Grieve, the decree is reversed. Upon the appeal of the plaintiff as against the Farmers & Merchants Bank, the decree is also reversed. The costs will be apportioned equally between the plaintiff and the Farmers & Mer-

chants Bank. Upon motion of either party, a decree will be entered in this court in accord with the views herein expressed.— *Reversed on both appeals.*

FAVILLE, C. J., and ARTHUR and ALBERT, JJ., concur.