MAGNESITE PRODUCTS COMPANY, Appellee, v. JOHN J. BENS-MILLER et al., Defendants; WILLIAM C. SCHEMANN et al., Appellants.
No. 39451.

April 2, 1929.

*Lehmann, Seevers & Hurlburt*, for William C. Schemann, appellant.

*Henry & Henry*, for Metropolitan Life Insurance Company of New York, appellant.

*Nelson Royal*, for appellee.

KINDIG, J.—A contest is waged over a certain house and lot in Des Moines by the plaintiff and appellee, Magnesite Products Company, as the holder of a mechanic's lien, against several de-fendants, including William C. Schemann, the owner of the real estate, and the Metropolitan Life Insurance Company of New York, a mortgagee, the appellants herein. John J. Bensmiller and other defendants did not appeal. It is through Bensmiller, however, that appellee claims its right to superiority over the appellants' titles and equities. Furthermore, the appellant Metropolitan Life Insurance Company obtained its mortgage from the defendant Bensmiller; while the appellant William C. Schemann also procured his present title by the foreclosure of a second mortgage (subject to the appellant Metropolitan Life Insurance Company's first), given by Bensmiller. At the execution sale under the foreclosure, appellant William C. Schemann was the purchaser, who thereafter in due time received a sheriff's deed. Therefore, it is seen that appellee and both appellants are claiming, directly or indirectly, through the defendant Bensmiller. Necessarily, then, a determination of

the dispute involves an analysis of Bensmiller's rights or equities at the time the respective interests of appellants and appellee accrued.

In September or October, 1924, appellant Schemann made, a contract to sell the vacant lot to the defendant Bensmiller for a consideration of $1,700. Bensmiller intended to construct a house thereon, and desired to raise funds therefor by means of a $4,000 first mortgage on the ground. $100 of the purchase price was paid by Bensmiller in cash, and Schemann was to receive the balance of the consideration in the form of a note for $1,600, secured by a second mortgage on the premises. However, the purchase agreement further provided that Schemann's deed to Bensmiller was to be left in escrow, to be delivered when the second mortgage aforesaid was in turn executed in appellant Schemann's behalf. Putting the thought in another way, the sale arrangement contemplated a second mortgage for appellant Schemann on said lot, and a first mortgage of $4,000 thereon. This first mortgage is the right under which the appellant Metropolitan Life Insurance Company now demands its superiority over appellee's mechanic's lien. Likewise, such second mortgage is the one through which appellant Schemann obtained his present title to the real estate. Appellee's interests grew out of material furnished Bensmiller after his purchase of the property aforesaid from appellant Schemann. Contention is made by appellee that the mechanic's lien is prior to both the first and second mortgages aforesaid; while appellants insist that the two mortgages are superior to said lien, because, they say, appellee acquired only the equities of Bensmiller, which were subject to the first and second mortgages. That is, appellants argue that the sale transaction aforesaid contemplated the first and second mortgages; so, as a result thereof, Bensmiller's interest in the lot was subject to both of those instruments. Hence appellants urge that appellee's mechanic's lien could in no event affect any part of the real estate except the remainder after the satisfaction of both mortgages.

I. Chronologically, the events happened as follows, after the sale of the lot: On November 20, 1924, appellee began furnishing material to Bensmiller for the house while the title to the real estate was still in appellant Schemann. Then both Schemann's deed to Bensmiller and Bensmiller's second mort-

gage to Schemann were delivered, respectively, shortly after November 30, 1924. Thereafter, on January 19, 1925, Bensmiller executed the $4,000 mortgage to the defendant Iowa Loan & Trust Company Bank, which was recorded January 20th. That document was duly assigned to the appellant Metropolitan Life Insurance Company, March 9th, and constitutes the basis for its present interest in the real estate aforesaid. Schemann's above-mentioned second mortgage was recorded February 17, 1925; while appellee's mechanic's lien was not filed until March 2, 1927.

Manifestly, under this record, the vendee, Bensmiller, never owned anything but an equity in the lot. Such equity was at all times subject to the first and second mortgages above described. Thus, when appellee furnished the material which is now asserted as the basis for the mechanic's lien, Bensmiller had only said equity in the realty. Consequently, appellants' first and second mortgages are superior to appellee's alleged equity under the mechanic's lien. *Marker v. Davis*, 200 Iowa 446. Extensive quotations are here made from *Marker v. Davis*, supra, because it controls the present litigation. Aptly, it is said in the *Marker* case, supra:

"This contractual right to a mortgage [the one named in the sale contract] was, in equity, the equivalent of a mortgage, and might properly be deemed an 'equitable mortgage,' in that equity will enforce a contract for a mortgage as effectively as the mortgage itself. When the mortgage contracted for is actually executed, and delivered to and accepted by the plaintiff, then he has a mortgage in express terms, and not a mere right to one. * * * The contractor who built the new house, and who filed the mechanics' lien, was Brown. The record presents a confusion of dates as to when the right to a lien attached. The claim filed contained dates as early as January, February, and March. The brief of the mechanics' lien holder fixes the date of beginning of the lien as in April. Let it be so taken. The right to a mechanics' lien then attached to the interest of Welle in the real estate. The plaintiff still held the legal title of record. Welle held the land by contract. The plaintiff held the legal title as security for the purchase price. His record title protected him, as constructive notice to third persons. The mechanics' lien attached to the interest of Welle, and did not rise above

it. The claimant was charged with notice of Welle's contract and of its contents. The mechanics' lien claimant, being thus charged with notice of the limited extent of Welle's interest at the outset, continued to be so charged to the end of the transaction. The mechanics' lien, therefore, never took priority as for want of notice. It is argued, however, that, by the express terms of the contract between plaintiff and Welle, the plaintiff was to have *no* lien until after the platting and the filing thereof, and that, therefore, the mechanics' lien necessarily took priority in this interval. The argument is plausible, but not wholly sound. The very contract *for a lien* created a lien as between the parties. A lien good between the parties was good as against third parties who had notice thereof. * * * The withholding of plaintiff's mortgage from record was effective for all the purposes of the statute. Such arrangement was not unlawful. The plaintiff thereby took the risk of juniority as to any and all third persons who might in the interim acquire interest in the platted lots. To this extent the plaintiff necessarily relied upon the personal responsibility of Welle. Welle, however, was not at liberty to encroach upon the plaintiff's contract lien. On the contrary, he was under obligation to protect it. * * * We deem it clear, therefore, that, as between plaintiff and Welle, the plaintiff had a lien at all times, under the express provisions of his contract, and that his alleged waiver thereof was a qualified one, and for a limited purpose; that such limited purpose did not open the door to the mechanics' lien holder, because his operations began while the original contract was wholly executory, and while the plaintiff still held the record title.''

*Keefe v. Cropper*, 196 Iowa 1179, likewise suggests:

''A purchase-money mortgage is what the term implies, and is predicated on the theory that upon the simultaneous execution of the deed and mortgage the title to the land does not for a single moment rest in the purchaser, but merely passes through his hands and, without stopping, vests in the mortgagee. It follows, therefore, that no lien of any character can attach to the title of the mortgagee, and that the title and interest has preference over previous judgments against the purchaser-mortgagor. * * * The intent to create the mortgage at the time the mortgagor takes the legal title is the element that carries the

priority, and when it exists, the mortgage, in the eyes of equity, is a purchase-money mortgage."

Also, in the case at bar, appellant Schemann, like the plaintiff in the *Marker* case, retained the record title until after the appellee commenced furnishing materials for the house. Resultantly, appellee had notice of Schemann's rights under the contract, which included both the first and second mortgages. Moreover, it is important to note at this juncture that a mechanic's lien holder is not a purchaser for value. *Fletcher v. Kelly*, 88 Iowa 475; *Queal Lbr. Co. v. Lipman*, 200 Iowa 1376. Therefore, as said in *Marker v. Davis*, supra, the appellee can impress its mechanic's lien only upon defendant Bensmiller's interest in and to the real estate. Its (appellee's) equity was subject to the rights of the appellants, who were holding the first and second mortgages. Appellee's demand, therefore, was inferior, and that of appellants superior. *Crawford-Fayram Lbr. Co. v. Mann*, 203 Iowa 748.

II. Nevertheless, appellee maintains that, at the time appellant Schemann repurchased the lot, on October 20, 1926, at sheriff's sale, under the foreclosure of the second mortgage above described, he had notice of appellee's mechanic's lien. It therefore demands a superior lien at least upon the improvement, if not upon the land.

Assuming, without deciding, that appellee is correct in its legal conclusions, yet, after carefully studying the entire record, we are convinced that appellant Schemann had no notice of the mechanic's lien at the time the property was bought at the foreclosure sale. A brief summary of the testimony will suffice. One C. C. Shive testified for appellee to this effect, on direct examination:

"I talked over this Exhibit C [a contract between the defendant Bensmiller and the Baehr-Shive Realty Company, which was collecting rents on the realty] with Schemann. [Exhibit C provided for the payment of interest on the two mortgages, and then the application of the balances, if any, upon the mechanic's liens.] If I didn't show him the agreement, I told him what was in it. That was probably along in October of 1925." (The sheriff's sale was on October 30, 1926.)

On cross-examination, the same witness said:

"I am not sure I ever showed this contract [Exhibit C] to Mr. Schemann. I think I gave him the amount of each claim."

Upon that evidence appellee depends for proof that Schemann had notice of the mechanic's lien when he bought the premises at sheriff's sale. To offset the foregoing testimony in that respect, appellant, while on the witness stand, said:

"The sheriff's sale was in October of 1926, and I got the sheriff's deed November 1, 1927. * * * The first I ever heard that plaintiff [appellee] claimed a lien on this property was when this suit was started. No one ever told me that plaintiff [appellee] or the Builder's Material & Fuel Company made any such claim. I did not know there were any unpaid bills for tile, cement, sand, brick, or mortar. I tried to collect the interest on my mortgage from Mr. Shive [appellee's agent], and he paid it to me. He told me Dayton [another defendant, who did not appeal,] was buying the property on a contract. I thought he [appellee's agent, Shive,] conceded that I was next to the first mortgage [appellant Metropolitan Life Insurance Company's mortgage]. He [Shive] also mentioned that there was a lien or two against the place. He mentioned the Van Dyck Heating Company [one of the defendants not appealing], and I think one other lien, that might be the Chamberlin [one of the defendants not appealing]. He [Shive] never mentioned the claims involved in this action. He [Shive] never showed me any paper that mentioned them. At the time of the buying of the property at sheriff's sale, I learned what liens were on file, and relied on the record there, and had no knowledge of the claims involved in this case. The lien involved was not filed at the time of the sheriff's sale."

Shive was uncertain and indefinite in reference to the information which he imparted to appellant Schemann. Obviously, the uncertainty of appellee's agent, Shive, on the one hand, and the certainty of appellant Schemann, himself, on the other, leave the preponderance of the evidence in favor of the latter, when considered together with the other facts and circumstances in the record. Clearly, then, the district court was wrong in finding that the mechanic's lien was superior to the two mortgages held by appellants, Schemann and the Metropolitan Life Insurance Company, respectively.

III. Under some conditions, the holder of an inferior incumbrance or lien is entitled to redeem from the foreclosure of a superior mortgage. But that rule does not apply to appellee, because its mechanic's lien had not been placed in judgment before the foreclosure. Section 11777 of the 1924 Code provides:

"A mechanic's lien before judgment thereon is not of such character as to entitle the holder to redeem [from execution sale]."

Wherefore, after November 1, 1927, when appellant Schemann obtained the sheriff's deed, the appellee had absolutely no lien or right of any kind in or to this property. Redemption was barred, because the mechanic's lien was not put in judgment. As a result, the mortgages belonging to appellants were superior, and the title to the real estate should be quieted in appellant Schemann, the present owner through said foreclosure sale, subject to the first mortgage of the appellant Metropolitan Life Insurance Company.

Accordingly, the judgment and decree of the municipal court should be, and hereby is, reversed.—*Reversed.*

ALBERT, C. J., and EVANS, FAVILLE, WAGNER, and GRIMM, JJ., concur.