MIDLAND SAVINGS BANK
FSB, Appellee,

v.

The STEWART GROUP, LC, Randy A. Buns, and Linda C. Buns, Rhiner Plumbing Co., Inc., Hibbs Excavation & Grading, Hallett Materials, Defendants,

and

Des Moines Cashway Lumber Co., Appellant.

No. 94–825.

Supreme Court of Iowa.

May 24, 1995.

Rehearing Denied June 21, 1995.

Dick L. Jensen of Dreher, Simpson & Jensen, P.C., Des Moines, for appellant.

Thomas L. Flynn and Margaret C. Callahan of Belin, Harris, Lamson & McCormick, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

Midland Savings Bank FSB (Midland) brought a mortgage foreclosure action against The Stewart Group, LC (Stewart), mortgagor, and several mechanic's lien claimants, including Des Moines Cashway Lumber Co. (Des Moines Lumber). The issue presented in this appeal is the priority and extent of priority, if any, of Midland's mortgages over Des Moines Lumber's mechanics' liens.

The district court granted Midland's motion for summary judgment, finding all of Midland's loan proceeds, except those used to pay cost of purchase, were used to finance work or improvements on the real estate securing each lien; Midland's mortgages were construction mortgage liens having priority over Des Moines Lumber's mechanics' liens; and that the loan proceeds used to purchase the land were purchase money mortgage liens having priority over the mechanics' liens. We modify and affirm.

## I. *Background.*

This appeal involves two companion cases involving identical parties and issues. Although the facts of each case differ, they present identical legal issues. The lender Midland brought foreclosure actions against the defaulting borrower Stewart and several mechanic's lien claimants, including Des Moines Lumber. All defendants in each case, other than Des Moines Lumber, either defaulted or were removed by the court's grant of summary judgment against them.

The district court granted Midland's motion for summary judgment and ordered Midland's mortgage liens to be prior and superior to Des Moines Lumber's mechanics' liens. We review the court's ruling for errors of law. Iowa R.App.P. 4. The material facts are not in dispute.

In the spring of 1993 Stewart, as developer, contracted to purchase unimproved lots from two separate owners. The contracts required a down payment and then the balance of the purchase price to be paid upon closing. Stewart also contracted to sell each lot to residential purchasers with residential improvements to be constructed by Stewart on each lot pursuant to plans.

Stewart took possession of the unimproved lots prior to closing with the vendors. Excavation and construction of the residential improvements commenced prior to the transfer of title by deed to Stewart.

Concurrently with payment of the balance of the purchase price the warranty deed for each unimproved lot from each contract seller was recorded together with Midland's mortgage on that lot. Midland paid the contract balance directly to the vendor of each unimproved lot, plus other expenses of purchase such as attorney fees for title opinions, recording fees, title search fees, and a loan origination fee.

On the same date the mortgage was recorded, Midland paid Stewart in payment of costs of construction work previously performed on the lots based on a draw request submitted to Midland indicating the sum requested was one-hundred percent of the cost of excavation. Except for the direct payment to the sellers of each unimproved lot, plus expenses of purchase, Midland would make payments to Stewart for costs of construction work previously performed on the lots pursuant to draw requests submitted by Stewart.

Des Moines Lumber furnished no building materials to Stewart until after the Midland mortgages had been recorded. After recordation of both mortgages, Des Moines Lumber furnished building materials for and later filed mechanics' liens against the respective lots.

In district court and on appeal, Des Moines Lumber claims Midland's mortgages are not "construction mortgage liens," under Iowa Code section 572.18 (1993), to the extent of the amount advanced for the purchase price of each property or to the extent Midland did not directly pay the persons who performed work or provided materials. Because mechanics' liens are preferred to all other liens, except those of record prior to the time of the original commencement of the work, Des Moines Lumber claims priority over Midland's mortgage lien.

We must determine if Midland's purchase-related advances are entitled to construction mortgage lien priority or purchase money mortgage priority. We also must consider if Midland's construction advances are entitled to priority. This compels us to construe Iowa's mechanic's lien law.

## II. *Iowa Code Chapter 572.*

A person who furnishes material or labor upon any building or land by virtue of any contract with the owner shall have a lien upon such building and land belonging to the

owner to secure payment for material or labor furnished or labor performed. Iowa Code § 572.2. The entire land upon which any building or improvement is situated shall be subject to a mechanic's lien to the extent of the interest therein of the person for whose benefit such material was furnished or labor performed. *Id.* at § 572.5.

Mechanics' liens are preferred to all other liens, "except liens of record prior to the time of the original commencement of the work or improvements." *Id.* at § 572.18. When required to construe this phrase, we held a person who furnished no labor or material upon the land until after a mortgage was recorded could claim a priority over the mortgage lien if any material or labor upon the building or improvement had been furnished before the mortgage was recorded. *Barker's Inc. v. B.D.J. Dev. Co.*, 308 N.W.2d 78, 81 (Iowa 1981). Thus, all mechanics' lienors were given a priority over the mortgage lien if one mechanic's lienor had commenced work on the property prior to the recording of the mortgage. *Id.* The consequences of permitting the mechanics' liens to relate back in time to the beginning of the work was discussed in the *Barker's* opinion. *Id.* at 81–82.

In response to the *Barker's* decision, the Iowa legislature added two sentences to Iowa Code section 572.18. *See Metropolitan Fed. Bank v. A.J. Allen,* 477 N.W.2d 668, 672 (Iowa 1991). The following language was added by the legislature:

> However, construction mortgage liens shall be preferred to all mechanics' liens of claimants who commenced their particular work or improvement subsequent to the date of the recording of the construction mortgage lien. For purposes of this section, a lien is a "construction mortgage lien" to the extent that it secures loans or advancements made to directly finance work or improvements upon the real estate which secures the lien.

1984 Iowa Acts ch. 1215, § 1.

■ To resolve the priority issues raised in this appeal, we must interpret the language of section 572.18. In our *Metropolitan* opinion we discussed prior interpretations, general principles, and history of the section.

*Metropolitan,* 477 N.W.2d at 670–72. Unless the statutory language is unambiguous, the court may consider, among other matters, "the object sought to be attained, the circumstances under which the statute was enacted, the common law or former statutory provisions, and the consequences of a particular construction." *Louie's Floor Covering v. De-Phillips Interests,* 378 N.W.2d 923, 927 (Iowa 1985) (citation omitted); Iowa Code § 4.6.

### III. *Purchase–Related Advances—Construction Mortgage Lien Priority.*

Midland urges the purchase-related advances made to acquire the two vacant lots were a necessary part of the construction loan and mortgage. The lender asks the court to broadly construe the statutory provisions giving preference to construction mortgage liens to include the acquisition costs of the land. The statutory priority given to construction loan liens over mechanics' liens was enacted after the legislature had defined a "construction mortgage" for determining priority of security interest in fixtures. *See* 1974 Iowa Acts ch. 1249, § 53. This Uniform Commercial Code provision provided

> a mortgage is a "construction mortgage" to the extent that it secures an obligation incurred for the construction of an improvement on land including the acquisition cost of the land, if the recorded writing so indicates.

Iowa Code § 554.9313(1)(c).

■ Iowa Code section 572.18 clearly limits the definition of a construction mortgage lien to secure loans or advances made to finance *work* or *improvements.* We conclude the plain language of the statute does not cover advances made to finance land acquisition. If the legislature intended to include loans or advances for the cost of acquisition of the land it could have done so. Midland is not entitled to a construction mortgage lien priority for advances to acquire the real estate lots.

### IV. *Purchase–Related Advances—Purchase Money Mortgage Priority.*

Midland also argues it has a priority over Des Moines Lumber's mechanic's lien be-

cause it has a purchase money mortgage and Des Moines Lumber's mechanic's lien is limited "to the extent of the interest" held in the land by Stewart, the party for whose benefit the materials were furnished. *See* Iowa Code § 572.5. Because the mechanic's lien is limited to the interest held by Stewart, Midland urges the circumstances are similar to those in *Ely Savings Bank v. Graham*, 201 Iowa 840, 843, 208 N.W. 312, 314 (1926), where we held that the holder of a purchase money mortgage takes priority over all other parties claiming through the mortgagor.

Des Moines Lumber claims this argument confuses the concept of attachment of mechanics' liens with the priority of mechanics' liens. Stewart acquired ownership interest in the lots by reason of its contract to purchase. Des Moines Lumber urges this interest supports the attachment of the mechanic's lien and its priority is then established under section 572.18.

In 1876 we held a vendor, who took a mortgage from the purchaser to secure the purchase money, had a priority over the holders of mechanics' liens, who had commenced their work before the mortgage was delivered and recorded. *Thorpe Bros. v. Durbon*, 45 Iowa 192, 193 (1876). Although the purchaser became the equitable owner,

> [u]ntil the execution of the deed and mortgage the plaintiffs [vendors] held the legal title for their security, and afterwards they held the mortgage. In changing one form of security for another for the same debt no other lien could intervene and become paramount thereto.

*Id.* at 193–94. *See* Annotation, *Priority as Between Mechanic's Lien and Purchase–Money Mortgage*, 73 A.L.R.2d 1407 (1960). If the vendor of real estate executes a deed to the purchaser and the purchaser simultaneously executes a mortgage and note for the purchase price, then the mortgage is a purchase money mortgage. The underlying principle of a purchase money mortgage is

> that upon the simultaneous execution of the deed and mortgage the title to the land does not for a single moment rest in the purchaser, but merely passes through his hands and without stopping, vests in the mortgagee. It follows, therefore, that no

lien of any character can attach to the title of the mortgagee....

*Keefe v. Cropper*, 196 Iowa 1179, 1181, 194 N.W. 305, 306 (1923). *See also* 53 Am.Jur.2d *Mechanics' Liens* § 271, at 808–09 (1970) (doctrine of instantaneous seisin).

Prior to the delivery of the deed, the vendor retains the legal title until the purchase price is paid; the purchaser has only an equitable interest. A subsequent purchaser or encumbrancer takes subject to the vendor's lien or right to the payment of the purchase price. The vendor holds legal title as security for the purchase price. The recorded legal title protects the vendor, as constructive notice to third persons. *Marker v. Davis*, 200 Iowa 446, 453, 204 N.W. 287, 290 (1925). Because record title is in the vendor, a person providing material and labor is charged with notice of the contents of the unrecorded sale contract. *Queal Lumber Co. v. McNeal*, 226 Iowa 637, 639, 284 N.W. 482, 484 (1939).

If an owner of land agrees to sell the land and allows the purchaser to take possession of the property and make improvements on the premises, the vendor does not thereby authorize the purchaser to impose a lien upon the land, nor does the knowledge of the vendor of the improvements give the lien of the materialmen priority over the vendor's lien. *See Schoeneman Lumber Co. v. Davis*, 200 Iowa 873, 876, 205 N.W. 502, 503 (1925); 53 Am.Jur.2d *Mechanics' Liens* § 125, at 645 (1970). The purchaser is the equitable owner of the real estate and as such has the right to install improvements upon the land. "The installation of any improvements on the premises under a contract with the vendee entitled the contractor to a mechanic's lien against the interests of such vendee in the real estate." *Darragh v. Knolk*, 218 Iowa 686, 688–89, 254 N.W. 22, 24 (1934). Although the vendor's interest in the land may be subject to a mechanic's lien if the purchaser is required to make improvements under the real estate contract, the mere knowledge of the making of improvements or the expectation that they will be made is not sufficient to give the mechanic's lien a priority over the vendor's lien. *Id.* at 688–90, 254 N.W. at 24.

■ We have consistently held a purchase money mortgage is superior to a lien for improvements although the mortgage was not executed and recorded until after the material and labor had been provided. *See Queal*, 226 Iowa at 639, 284 N.W. at 484; *Magnesite Prod. Co. v. Bensmiller*, 207 Iowa 1303, 1306, 224 N.W. 514, 516 (1929); *Marker*, 200 Iowa at 454, 204 N.W. at 291. The mechanic's lien statute in effect when these cases were decided provided a mechanic's lien should be preferred to all other liens "except liens which the contractor or subcontractor, as the case may be, has actual or constructive notice before the commencement of the work or the furnishing of material." In 1943 the legislature deleted this provision and added "except liens of record prior to the time of the original commencement of the work or improvements." 1943 Iowa Acts ch. 260, § 1.

The words "liens of record" include the concept of constructive notice. If the vendor's title is of record, contractors and others have constructive notice of the vendor's interest. *Marker*, 200 Iowa at 454, 204 N.W. at 290. "Contractors have constructive notice of all information contained in recorded documents and have a duty of inquiry concerning circumstances disclosed in those records." *Clemens Graf Droste Zu Vischering v. Kading*, 368 N.W.2d 702, 709 (Iowa 1985). The statutory amendment in 1943 did not modify the principles of constructive notice. Because the words "liens of record" mean substantially the same thing as "constructive notice," the 1943 amendment did not alter the priority status of a purchase money mortgage as expressed in our prior opinions.

■ The fact Midland was not the owner of the lots does not deprive it of the protection given a purchase money mortgage. "It is immaterial whether the mortgage runs to the vendor, as mortgagee, or to a third person, who as a part of the same transaction, advances the purchase money." *In re Lewis*, 230 Iowa 694, 700, 298 N.W. 842, 845 (1941). The purchase money mortgage lien given to Midland protects the unpaid balance of the purchase price. The mortgage lien priority recognized in the court's summary judgment for recovery of the payments made on the remaining contract balance is affirmed. However, the judgment should be modified to exclude the costs for title opinions, title search, recording fees, and loan origination fees. These advances are not protected by the purchase money lien.

*V. Construction Mortgage Lien.*

■ A construction mortgage lien extends to secure loans or advancements "made to directly finance work or improvements upon the real estate which secures the lien." Iowa Code § 572.18. Des Moines Lumber urges the term "directly" is unambiguous and must be accorded some meaning and effect. It is urged the money advanced by Midland must be paid directly to the providers or suppliers of the work or improvement to qualify as a construction mortgage lien. In contrast, Midland urges the term "directly" must not be construed in isolation because it is an adjective modifying the word "finance," Midland claims money paid to Stewart for the purpose of providing funds to carry out the development project satisfied the statutory requirement.

We agree with Midland. If the intent of the legislature was to require the lender to directly pay the mechanics, it could have so stated. Generally, a construction loan mortgagee has no duty to insure that the borrower pays contractors and materialmen. *See General Mortgage Corp. v. Campbell*, 258 Iowa 143, 153, 138 N.W.2d 416, 421 (1965). The term directly can be understood as a contrast to indirect. A loan or advancement of general credit furnished by a borrower would not constitute a direct financing of a construction project. On the other hand, if the loan or advancement is specifically made to pay costs of a specific improvement or project then the mortgage secures a loan or advancement made to directly finance the work and has the protection of a construction mortgage lien. We affirm the district court's rulings as modified. We remand for judgment in accordance with this opinion.

**AFFIRMED AS MODIFIED AND REMANDED.**