### GLEATON v. TYLER.

1. HUSBAND AND WIFE—AGENCY—APPLICATION OF PAYMENTS.—In action for foreclosure of mortgage, defendant is not entitled to have her mortgage credited with rents for the mortgaged lands, received by plaintiff from the tenant of the land after the date of the mortgage under a contract previously made that these rents should be paid to plaintiff, and which were applied, under the direction of defendant's husband, acting as her agent, to a debt due by this husband to plaintiff.

2. IBID.—IBID.—IBID.—A husband, as agent of his wife, has no authority to direct moneys of his wife to be applied to a debt due by himself, and such moneys, therefore, must be treated as credits upon a then existing mortgage indebtedness of the wife to the creditor to whom the payments were made.

Before TOWNSEND, J., Aiken, June, 1894.

Action by M. L. Gleaton against Rosa A. Tyler for foreclosure of two mortgages, commenced June 15, 1893. The first mortgage for $625 was executed July 2, 1888, and the second

mortgage for $75 executed on February 28, 1889. The contract with Andrew Jackson was made late in 1887, to commence with the year 1888. The Circuit Judge, in his decree, says: "I find from the testimony, that in 1887, one Andrew Jackson rented from Mrs. Tyler, the defendant, one of the tracts of land which was subsequently covered by her $675 mortgage; that he was to have the land five years; that the rents were to be paid to the plaintiff; that the plaintiff did receive two bales of cotton, or the proceeds thereof, in the fall of 1888, and about the same amount in the fall of 1889, and some, not so much, in 1890, was shown by the receipts in evidence, and by other testimony; and that he credited the same on the store account of T. B. Tyler, the defendant's husband." The defendant appealed.

*Messrs. Croft & Chafee,* for appellant.

*Messrs. Henderson Bros.,* contra.

April 4, 1895. The opinion of the court was delivered by

MR. JUSTICE POPE. The plaintiff in his complaint embodied two causes of action—one the breach of the condition of a mortgage of certain real estate in Aiken County, in this State, which was executed to the plaintiff by the defendant to secure an indebtedness of $625, with interest at ten per cent. per annum; and the second for the breach of the condition of another mortgage on a separate parcel of land, in Aiken County, in this State, which was executed to the plaintiff by the defendant to secure an indebtedness of $75, with interest at ten per cent. per annum. The defendant in her answer alleged that she was a married woman when the two mortgages were executed and the debts secured by them were contracted, and that they were not for the benefit of her separate estate; and then that, if it was her duty to pay the debts secured by the mortgages, she had fully paid the same.

Testimony was taken before the master for Aiken County. The action then came on to be tried by his honor, Judge Townsend, who rendered his decree overruling the defences, and ordering judgment for the foreclosure of both mortgages to pay

the debts which said mortgages respectively were intended to secure. The first debt was ascertained to be $738.46; the second debt was ascertained to be $103.33. From this decree the defendant appealed as to both debts and mortgages, but finally she has abandoned all her grounds of appeal except as to the $738.46. This sum she claims should be reduced by the sum of $66.24, paid on the 26th February, 1889, and the further credits of $45, paid on 5th November, 1888; $38.67, paid on 1st December, 1888; $47.75, paid on 18th October, 1889; $47, paid on 12th November, 1889; $56.17, paid on December 4, 1889; and $46.60, paid on 20th September, 1890—in addition to the credits the plaintiff has already admitted, to wit: $153.50, paid on 15th September, 1891, and $172.65, paid on 22d October, 1891—leaving only the sum of $105.93 due on the first cause of action on 27th August, 1894.

We have carefully examined the testimony, and have concluded that the two payments of $45, paid on 5th November, 1888, and $38.67, paid on 1st December, 1888, cannot be allowed the defendants as credits, for it seems to us that the plaintiff had contracted, through her husband, with her tenant, Jackson, say on 1st January, 1888, quite six months before she made the first mortgage; and, therefore, her rents for that year need not be said to have been contracted to be paid on this mortgage. But, on the other hand, we are satisfied the Circuit Judge erred in refusing the defendant the other credits upon a misapprehension of the law governing agents in transactions for their principals. We may grant the proposition that the defendant made her husband her general agent, but we cannot concede that a general agent, without a special power to do so, can direct the money of his principal so as to appropriate the same to the payment of his own debts. Such a doctrine, if recognized as law, might lead to the most pernicious results.

We do not think our views could be better illustrated than is done in the case of *Stewart* v. *Woodward*, 28 Am. Rep., 488. In that case Powers, J., said: "The report of the auditor shows that Carrier was the general agent of the plaintiffs in the conduct of their business at Montpelier. His authority thus em-

powered him to do all things usual and useful to conduct the business of a merchant tailor. A general agency is, however, a restricted service. The agent cannot go outside the practical scope of his principal's business. So far as the business of his principal is concerned, he may do all that his principal could do. He cannot steal his principal's goods, nor appropriate them to his own use; he can only appropriate them to the use and profit of the principal. Persons dealing with a general agent are bound to measure the scope of his authority, as if they are dealing with a special agent; although the compass of authority in the one case is wider than the other, still it is to be understood that it has its limits. *It is to be understood that it is an agent, and not a principal, who acts*" (italics ours). As to a husband's agency for the wife, see Mech. Agen., § 63; *McLaren* v. *Hall*, 26 Iowa, 305. The observations of Chief Justice McIver, at page 535, in *Martin* v. *Suber*, 39 S. C., are very pertinent in the matter of the agency of the husband for the wife.

It follows, therefore, that the defendant is entitled to have placed on her note for $625, due on 1st October, 1888, with interest according to the tenor of the note, the following credits, to wit: $66.24, on the 26th February, 1889; $47.75, on the 18th October, 1889; $47, on the 12th November, 1889; $56.17, on the 4th December, 1889; $46.60, on the 20th September, 1890—together with the conceded credits of $153.50, on the 15th September, 1891, and $172.65, on the 22d October, 1891; and when these modifications are made, that the decree be affirmed.

It is the judgment of this court, that the judgment of the Circuit Court be modified as herein required, and thereafter that the same be affirmed; and it is ordered, that the cause be remanded to the Circuit Court to enforce this judgment.