F. D. AND J. W. YOUNG, Appellants, v. ELLA F. SWAN AND E. R. SWAN.

**Mechanic's Lien:** CONTRACT: *Ratification by wife.* The fact that a wife knew that materials purchased by her husband on credit from plaintiff were used in her house does not amount to a ratification of the husband's acts, where it is shown that the wife furnished the husband with money to pay for all purchases made for her house, and had no knowledge that any were made on credit.

PAYMENT BY WIFE: *Application on husband's general account.* Where a wife furnished the husband with money to buy lumber for her house, and he purchased the same with such money from the plaintiff, with whom he had a general account for lumber, without directing on whose account the amount paid should be applied, plaintiff cannot apply the amount on the husband's general account, in order to claim a mechanic's lien on the property of the wife.

*Appeal from Hamilton District Court.*—HON. D. R. HINDMAN, Judge.

FRIDAY, DECEMBER 11, 1896.

SUIT in equity to establish and foreclose a mechanic's lien against the property of Ella F. Swan, for lumber and building materials sold and delivered. Ella F. Swan, in answer, denied that she ever made or authorized any contract for the purchase of lumber of plaintiffs, and states that she had no knowledge that any material of plaintiffs went into the house which was built on a certain lot owned by her. Her husband, E. R. Swan, admits that he purchased lumber of plaintiffs during the years 1889 and 1890, but he denies that he ever purchased any in his wife's name. He further says that he purchased and paid for the lumber which

went into his wife's house, but that plaintiffs failed to give credit therefor. He further pleads that plaintiff's account is not just and true, and that it contains items which plaintiffs well knew did not go into his wife's house. The lower court dismissed the prayer for a lien, and plaintiffs appeal.—*Affirmed.*

*Wesley Martin* for appellants.

*D. C. Chase* for appellees.

DEEMER, J.—The evidence shows that the plaintiffs sold and delivered to the defendant, E. R. Swan, who was a contractor and builder and owner of what was known as the "Novelty Works," various and sundry items of lumber and building material during the years 1888, 1889, 1891, and 1892, amounting in the aggregate to more than one thousand four hundred dollars. This lumber was all sold and charged upon the books to the defendant, E. R. Swan. Various payments were made upon this account, and the balance due May 19, 1892, as shown by plaintiff's books, was three hundred and twenty-six dollars and seventy cents. The plaintiffs seek to establish a mechanic's lien upon the property of Ella F. Swan for the sum of four hundred and thirty-nine dollars and eighty-one cents, claiming that they made a contract with her by which they agreed to furnish this amount of lumber for the construction of a building upon lots No. 3 and 4, in block 101, in Dubuque & Pacific Railroad addition to the city of Webster City. This alleged contract is denied by both defendants, and defendant, E. R. Swan, denies that the items shown by the exhibit attached to plaintiff's petition went into the house built upon his wife's land. Defendant, Ella F. Swan, pleads that she never authorized any one to purchase lumber of the plaintiffs,

and that she did not know that any lumber was purchased of them on credit. She further says that she supposed all the material going into her house was paid for. The plaintiffs do not claim to have made any contract with the wife for the sale and delivery of the lumber for which they now seek to establish a mechanic's lien; and it clearly appears that all their dealings were with E. R. Swan, and that the charges made upon their books were against him alone. They attempt to sort out and identify the lumber which went into Ella F. Swan's house, by entries upon their journal following each item of charge for which they claim a lien in these words, "for house." It is manifest, however, from the evidence, that these entries were not all made at the time the charge was entered; and it further appears, beyond controversy, that many of these items did not go into the house which was built on Mrs. Swan's land. It is true, plaintiffs say they relied upon the property as security; but it further appears that plaintiffs did not know in whom the title was at the time they sold the lumber, and did not know whether it was incumbered or not. To establish their claim, they rely upon the agency of the husband for the wife, and the further fact that the wife knew their material was being used in the construction of her house. With reference to this last claim, it may be that the wife knew that lumber purchased of plaintiffs was being used in her house; but it is shown beyond all controversy that she supposed it had been fully paid for before delivery, and there is no showing whatever that she knew it was being purchased on credit. There is evidence to the effect that she furnished her husband with the money with which to purchase the lumber which went into her house, and that she supposed all material was fully paid for; and there is positive evidence from the husband that he did pay for all lumber which he used in his wife's house, although

this is denied by one of the plaintiffs. This much, however, is certain: that defendant E. R. Swan paid to plaintiffs much more than the amount of their present claim; and it further appears that during the time this lumber was being used, defendant E. R. Swan paid to plaintiffs more than the amount of the bill they furnished for the house. It is also shown that E. R. Swan advanced to plaintiffs, during this time, more than he was owing them; in other words, that he paid in advance for some of the lumber furnished for the house which was being built on the land of his wife.

There is no evidence from which a ratification of the husband's acts in purchasing the lumber for the house can be inferred, for the reason that there is no showing that the wife knew the lumber was being purchased on credit. Indeed, the fair inference from the evidence is that the wife furnished the husband with the money with which to pay for all the material, and supposed that it was all paid for at the time it was delivered. She was about the house two or three times during the course of its construction, it is true; but, as she had provided the means with which to pay for the lumber, she cannot be held on the theory that she ratified her husband's acts. The most that can be claimed for appellants is that the wife furnished the husband with money with which to purchase the material for the house; that he purchased it of plaintiffs, paid them the money which she had given him, but did not direct that it be applied upon this particular account; and that plaintiffs applied it on general account. We doubt very much whether this state of facts is shown; but concede that it is; how stands the case? The wife furnishes the husband with money with which to buy a bill of lumber. The husband goes to a material man with whom he has a general account, purchases the lumber, pays the money which his wife has given him to

the merchant, and the merchant applies it upon the general account. Can he now, in an action to establish and foreclose a mechanic's lien against the property of the wife, insist that these payments of the wife's money shall be applied upon the husband's general account, to the detriment of the wife? We think not. The husband could not directly appropriate this money to his own use against the consent of the wife, and it surely is not the province of a court of equity to misappropriate it. *Gleaton v. Tyler* (S. C.) (21 S. E. Rep. 333); *Stewart v. Woodward*, 28 Am. Rep. 488. But, aside from this, we are constrained to believe that the defendant, E. R. Swan, when he paid plaintiffs the money which had been furnished by his wife, directed that credit be given upon the items of account for lumber which went into her house. This defendant testified positively that he gave such directions, and the plaintiffs do not squarely deny it. They rely upon their books, and these do not, except in two instances, show any particular application of payments. Again, it appears that on the next day after the husband purchased the first of the lumber for the house, he paid the plaintiffs two hundred and fifty dollars. This was more than the balance due on his whole account; and it is manifest that it was at that time understood that more lumber was to be purchased, and that the amount of the payment should, at least, be credited on the account for lumber for the house. The evidence shows that all the items for the house account have been paid, and plaintiffs are not entitled to a lien against it. Moreover, the evidence as to what was furnished for the house, and what on general account, is very unsatisfactory. A great many of the items for which plaintiffs claim a lien did not go into the house; and it further appears that there were some credits which should have been allowed

which do not appear upon the statement for a mechanic's lien filed by the plaintiffs.

Although not a controlling point in the case, we may observe that there is much to be said in favor of appellees' position that plaintiffs did not file a just and true statement or account of the demands due them, as required by statute. It may be that this was unintentional, but, whatever may be the truth regarding this matter, we do not think they are entitled to a lien against the property. The case of *Price v. Seydel*, 46 Iowa, 696, lends support to our conclusions.— AFFIRMED.