OREGON LUMBER COMPANY, Appellee, v. G. W. BECKLEEN, Appellant, IOLANDA BECKLEEN and JOSEPH O'NEAL.

Mechanics' liens: SALE TO TENANT: LIABILITY OF LANDLORD. A lien in favor of a lumberman will not be established against the land for material purchased by a tenant and used by him in the construction of buildings upon the leased premises, which he had the right to remove at the end of his tenancy, where there was no agreement of the landowner to become responsible for the same.

*Appeal from Dallas District Court.—* HON. J. H. APPLEGATE, Judge.

TUESDAY, MARCH 6, 1906.

ACTION to recover for lumber sold by the plaintiff to Joseph O'Neal, and to establish a lien upon the land of the other defendants. The petition was dismissed as to Iolanda Beckleen, and decree entered establishing a mechanic's lien against the house and the leasehold interest of O'Neal in the land, and also establishing the plaintiff's claim as an equitable lien against G. W. Beckleen's interest in the land. The latter appeals.— *Reversed.*

*Frank E. Clinite* and *Thos. F. Stevenson,* for appellant.

*White & Clarke,* for appellee.

LADD, J.— Iolanda and G. W. Beckleen owned 10 acres of land.   The latter had leased it in 1902 to Joseph O'Neal for a period of ten years for the purpose of mining coal therefrom.   In January, 1903, O'Neal applied to the plaintiff for lumber with which to erect a dwelling house upon this land, and according to the testimony of Taylor, the manager of plaintiff's yard, was informed that it was not the cutom of the company to sell lumber on credit to any one, except the owner of the premises on which the building was to be erected, and advised him that an order from the owner was necessary.   This was corroborated by another witness; but O'Neal testified he was informed by Taylor that if Beckleen said it was all right he would let him have the lumber, and that nothing was mentioned regarding an order.   Thereafter O'Neal applied to Beckleen and informed him what he claimed the manager had said.   Beckleen responded that he would not be responsible for the lumber, and would become security for no one; but that O'Neal might erect as many houses as he pleased and move them off when he got ready. This is corroborated by Beckleen, who swore that O'Neal merely stated that he could get the lumber if Beckleen would give him permission to build on the land, that O'Neal said the manager did not ask for security, and that he had answered as above stated.   Thereupon he caused to be written the following note for O'Neal to hand to Taylor:   " Des Moines, Iowa, January 26, 1903.  Mr. Taylor:  It is all O. K. with me as for Mr. O'Neal having the lumber and building.  Geo. Beckleen."

Regardless of what may have occurred between Taylor and O'Neal the evidence leaves no doubt but that this was written upon the statement of O'Neal that he could procure the lumber if the former gave him permission to build, and without any intention to enabling O'Neal to procure the lumber on Beckleen's credit or on the security to be afforded by the land.   Nor do we think there is anything in the communication which Taylor could properly have construed to be

an order for the lumber, or as indicating that the house was being·constructed for the benefit of himself.   Indeed, the land had been leased for a period of ten years, and it is manifest that the owners would acquire no immediate benefit from the erection of the house.   It may be that he understood O'Neal was without means, but this alone was not sufficient to charge him with knowledge that the plaintiff was declining to sell to him on time.   For all that appeared it might have been willing to aid him in acquiring a home, or to sell on the security afforded by the house and lease alone. Concerning what had occurred between O'Neal and Taylor, Beckleen had no knowledge, save as communicated to him by O'Neal.   There is nothing in the writing to indicate to any one that Beckleen had other information, and in the absence thereof he was not required to word his communication otherwise than to clearly give his consent.   Surely Taylor could· not have understood from the note alone that Beckleen was authorizing him to furnish the lumber on his credit, or on the security afforded by the land.   He could only arrive at this conclusion on the supposition that O'Neal had informed Beckleen that the company would not sell save on the latter's credit, and, as we have seen, nothing of the kind was communicated.   If he relied on O'Neal, this was through no fault of Beckleen who was not bound to suppose that the company required anything further than his permission.

The trial court seems to have thought that, as O'Neal was without means and the owner's permission could add nothing to plaintiff's security for the credit to be extended, Beckleen should be held to have known something more was demanded by the company.   For all he knew it might have desired to do as others are doing every day — sell on credit to a person without property in reliance upon his integrity or on the security afforded by the building and leasehold.   See section 3090, Code.   Surely he was under no obligation to inquire into its reason for exacting permission from him, and, in the absence of information to the ·con-

trary, had the right to rely upon the assurance of O'Neal that no security was desired. The principle announced in *Miller v. Hollingsworth,* 36 Iowa, 163 has no application. There the land belonged to the wife, and with her knowledge and acquiescence her husband purchased lumber without paying for it and improved the land, enhancing its value thereby, and the court held that she ought not to be allowed to appropriate another's property to her benefit without compensation and established an equitable lien against the land. Here the permission to O'Neal to build was on condition that he might remove the building, and was not based on any benefit to the land-owner. It was a mere consent for the supposed advantage of the tenant, without thought of gain to the landlord. To charge the land in such a case would be equivalent to saying that a landowner may not consent to the erection of an improvement on the leased premises without rendering them liable to the payment of the cost incurred. Such, of course, is not the law. If the plaintiff's manager, because of his talk with O'Neal, attributed to the writing a meaning not intended and not to be inferred therefrom, in view of the circumstances under which written, it was owing to his reliance on what O'Neal may have said, rather than upon anything appellant had said or done. As between appellant and the company, O'Neal, in the interview with the former, if acting for any one but himself, was representing the company rather than appellant, and the latter was in no respect responsible for anything he may have said to the manager, save as he repeated the conversation with Beckleen. The decree will be so modified as to eliminate the portion establishing the equitable lien against appellant's land.— *Reversed.*