CHARLES D. NOLAN, Appellant, v. W. A. WICK et al., Appellees.

No. 42359.

APRIL 3, 1934.

REHEARING DENIED SEPTEMBER 18, 1934.

F. L. Anderson and John D. Stewart, for appellant.

Crissman & Bleakley, for appellees.

MITCHELL, J.—W. A. Wick was the title owner of a certain acreage just beyond the eastern limits of the city of Cedar Rapids, fronting on the Lincoln Highway. Wick sold the property under a written contract of purchase for $6,500 to E. J. Yeoman and wife, the Yeomans agreeing to pay for the property in monthly payments of $45. The Yeomans moved into the property and took possession. Some months afterwards there was trouble with the well, which furnished the water supply for the house, and one Charles D. Nolan, who was a well driller in Cedar Rapids, drilled a new well upon the premises and submitted a bill for the sum of $935.36. The Yeomans did not pay the bill and Wick refused to do so. Nolan therefore filed a mechanic's lien against the property, being the property that Wick had sold to the Yeomans, and as to which there is no dispute as to the legal description. Shortly afterwards Nolan commenced an action in equity to establish and foreclose his claim for mechanic's lien, and for judgment against both the Wicks and the Yeomans, with interest and costs. The case proceeded to trial, and the lower court held in favor of Nolan, and as against the defendants Yeoman and wife for the amount claimed by the said Nolan, and entered judgment against the Yeomans and established a lien

against the interest of the Yeomans in said real estate for said amount. The lower court dismissed the petition as against the 'defendants W. A. Wick and wife.

Nolan, being dissatisfied with the judgment and decree of the lower court as to the dismissal of the action against the Wicks, has appealed to this court.

It is the contention of the appellant that he was entitled to a judgment against the Wicks and to foreclosure of his mechanic's lien against the property which Wick had sold the Yeomans, and that his mechanic's lien was paramount and superior to Wick's claim against said property; and that, if he was not entitled to the foreclosure of said mechanic's lien, he was at least entitled to an equitable lien as against the property described in the petition.

The record in this case shows W. A. Wick was the owner of a certain acreage, upon which there was a home and other buildings and a well; that said acreage was on the outskirts of the city of Cedar Rapids; that whoever lived in the house had to rely upon the well for water for living purposes. Wick sold the premises to the Yeomans. The sale was under a written contract of purchase. The sum agreed upon was $6,500, and the Yeomans were to pay this at the rate of $45 per month. The Yeomans moved into possession of the premises, and some months after they had been in possession Mrs. Yeoman discovered that she could not draw any water from the well. She called up a concern in Cedar Rapids that repaired wells, and in compliance with her request they sent a man to ascertain what the trouble was. This man, upon examining the well, informed Mrs. Yeoman that it was what was known as a "shallow" well and that it was dry. He talked with her for some little time about it and finally said he would send out a well driller to talk with them about drilling a new well. A day or so later Mr. Nolan, the appellant in this case, an experienced well driller, went out to the Yeoman place in compliance with the request made by Mrs. Yeoman to the employee of the plumbing establishment, and talked with the Yeomans about drilling a well. The Yeomans asked him about the price and requested him to furnish an estimate of the costs. The Yeomans then told Nolan they were purchasing the property under contract from Wick and that before they would make any arrangements to have the well drilled they wanted to take the matter up with Wick. Yeoman testified that he told Nolan he had no authority to enter into any arrangement with him to drill

the well before he secured Wick's consent, and also that he would like to have him submit a written proposition covering the construction of the well and the cost of same. Nolan did submit a written agreement. It is interesting to note that the agreement provided just for an agreement between Nolan and Yeoman, and Wick is in no place mentioned. According to Yeoman's testimony, he did not submit this written agreement to Wick, nor did he talk with Wick about the drilling of the well by Nolan prior to the time that Nolan commenced work. Nolan shortly after the talk with the Yeomans called Wick on the telephone but was unable to get him and left his telephone number. Wick called Nolan back. There is a material dispute in regard to the conversation over the telephone. It is Nolan's contention Wick said to him, "What would the well cost?" and Nolan said "$1.90 a foot." Nolan says Wick complained some about the price but finally told him to go ahead with the well. Wick's idea of the conversation is that he asked Nolan what the job would cost and Nolan said it would not cost to exceed $500 or at the rate of $1.90 a foot, and Wick then told Nolan that the price was too high and he would "shop around a little"; and that he at no time told Nolan to proceed to drill the well. On the day following the conversation between Wick and Nolan over the telephone, Wick went to the plumbing establishment that had sent Nolan out to see the Yeomans and had a conversation with the manager. There is also a dispute as to the conversation that took place in the plumbing establishment. The manager testified that Wick simply inquired as to the responsibility of Nolan, but, according to the testimony of Wick, he was just shopping around to try to find the cheapest well driller. Within a day or so after the conversation that Nolan had with Wick over the telephone, Nolan took his equipment out to the premises and commenced drilling the well. Shortly after Nolan had commenced the job, Wick came out to the premises and saw Nolan drilling the well. Wick explained his trip to the Yeoman home by the fact that he wanted to get some eggs and he was not interested and had no knowledge that the well was being drilled. But, regardless of the reason for the trip, whether it was to secure fresh country eggs or to ascertain whether the well was being drilled, Wick did know within a day or so afterwards that Nolan was drilling the well, and did not object. The well was completed and the equipment (consisting of a windmill, pump, and pipes) was installed. There is no complaint made in the record

at any place in regard to the well. It seems to satisfy every one; in fact, it is the only thing in the record upon which the parties are all agreed. After performing the labor and furnishing the materials for the well, Nolan naturally sought pay for some, and found that within a few months after the well was completed Wick had canceled his contract for the real estate which he had entered into with the Yeomans, due to the failure on the part of the Yeomans to make the payments required by the contract, and Wick then informed Nolan that he was not liable for payment of the well. Nolan filed his mechanic's lien and brought this action to foreclose it.

Section 10271 of the 1931 Code is as follows:

"10271. Persons entitled to lien. Every person who shall furnish any material for or perform any labor upon any building, including those engaged in the construction or repair of any work of internal improvement and those engaged in grading any land or lot, by virtue of any contract with the owner, his agent, trustee, contractor, or subcontractor shall have a lien upon such building and upon the land belonging to such owner on which the same is situated, or upon the land or lot so graded, to secure payment for material furnished or the labor performed."

It thus appears from the statute and has been held time and again by this court that it is only under contract with the owner that the mechanic can be allowed a lien. In the case of Wilkins v. Litchfield, Executor, 69 Iowa 465, at page 467, 29 N. W. 447, this court said:

"The statute gives no mechanic's lien upon any interest except by virtue of a contract between the mechanic and the owner of the interest."

And so, if Nolan is to recover in this case upon the theory of a mechanic's lien, he must show that there was a contract between him and Wick. A contract requires a meeting of the minds, and in this case the record shows clearly that there was never any meeting of the minds. Nolan only talked to Wick once and that time over the telephone. The Yeomans at no time prior to the commencing of the drilling of the well, talked with Wick about Nolan drilling the well. The proposal or contract, which was a written agreement, submitted by Nolan to the Yeomans, provided only for the signature

of thé Yeomans. Nolan has failed to prove there was a contract, and therefore is not entitled to a mechanic's lien.

But it is the claim of the appellant that since Wick had knowledge the well was being drilled, and made no protest, he would be liable. This court has definitely decided this question in the case of Hunt Hdw. Co. v. Herzoff, 196 Iowa 715, in which we said, at page 717, 195 N. W. 264:

"Mere knowledge by the owner that a purchaser of real property from him under a contract for a deed, to be executed upon the payment of the purchase price, has placed improvements on the property, is not sufficient to create an implied promise upon his part to pay for such improvements, nor to charge his interest therein with a lien."

And in the very late case of Knapp v. Baldwin, 213 Iowa 24, at page 29, 238 N. W. 542, we said:

"It is the repeated pronouncement of this court that knowledge on the part of the vendor that the vendee is making improvements upon the premises described in the real estate contract is not sufficient to give the lien of materialmen priority over the vendor's lien."

It is well settled in this state that mere knowledge of the making of such improvements, or the mere expectation by the vendor that the vendee will make them, is not sufficient. 18 R. C. L. 697; Knapp v. Baldwin, 213 Iowa 24, 238 N. W. 542; Hunt Hardware Company v. Herzoff, 196 Iowa 715, 195 N. W. 264; Young v. Swan, 100 Iowa 323, 69 N. W. 566; Beh v. Moore, 124 Iowa 564, 100 N. W. 502; Oregon Lbr. Company v. Beckleen, 130 Iowa 42, 106 N. W. 260, 6 L. R. A. (N. S.) 485; Cedar Rapids S. & D. Co. v. Dubuque Realty Co., 195 Iowa 679, 192 N. W. 801; Sheppard v. Messenger, 107 Iowa 717, 77 N. W. 515; Schoeneman v. Davis, 200 Iowa 873, 205 N. W. 502; Ellis v. Simpson, 199 Iowa 671, 202 N. W. 554; Joyce Lumber Co. v. Wick, 200 Iowa 796, 205 N. W. 476.

The appellant also claims that Yeoman was Wick's agent in entering into the arrangement with Nolan. The record, however, clearly discloses that this was not the case, for, according to Yeoman's own testimony, he never even told Wick that he intended to drill a well, but did say to him, "I would like to, if I could make arrangements." Yeoman never showed to Wick the proposal or the

agreement that Nolan gave to Yeoman covering the drilling of the well, before the well was commenced. In fact, Wick knew nothing about the written agreement until after this case had been commenced. Yeoman at no time pretended or presumed to be the agent of Wick; all acts were done in Yeoman's own name. There is no proof whatever in the record that Yeoman was Wick's agent or at any time presumed to be his agent.

Several other propositions are raised by the appellant, all of which have been given careful consideration. It is unfortunate that Wick, who will receive the benefits of the appellant's labor and material that he furnished, cannot in law be compelled to pay for this needed improvement, and we regret that there is no way in which Nolan can receive pay for his work and for the material other than from the Yeomans. He knew the Yeomans had purchased this real estate under a contract, and yet, in face of this information, he made no legal agreement with Wick. Wick has seen fit not to pay for this improvement. There is no way that we can force him to do so.

Judgment and decree of the lower court must be and it is hereby affirmed.

CLAUSSEN, C. J., and STEVENS, KINDIG, ANDERSON, and KINTZINGER, JJ., concur.