J. W. DARRAGH, Plaintiff, Appellee, v. RALPH KNOLK et al., Defendants; GEORGE BARNOSKE et al., Defendants, Appellants.

No. 42203.

APRIL 3, 1934.

REHEARING DENIED SEPTEMBER 20, 1934.

Donnelly, Lynch, Anderson & Lynch, for appellants.

L. D. Dennis, for appellee.

KINTZINGER, J.—In March, 1931, negotiations were begun between defendants Knolk and the defendants Barnoske, for the purchase of real estate in Cedar Rapids belonging to the Barnoskes. The property was in the hands of Mr. Dotson, a real estate agent, for sale. One of the steps in the negotiations was a written proposition dated March 14, 1931, wherein the vendee Knolk offered, and the vendor Barnoske agreed to accept, $4,300 for the property payable $250 on date of possession, $350 six months from date of possession, and $45 per month after June 1, 1931, with interest; possession to be given April 1, 1931; vendee to assume four installments of paving tax.

All negotiations, including the foregoing proposal, finally culminated in the following written "contract of sale" dated March 16, 1931, referred to as Exhibit 5, the material parts of which are substantially as follows:

"The said party of the first part, George Barnoske * * * agrees to sell to the party of the second part, and the party of the second part, Ralph M. Knolk, * * * hereby agrees to purchase Lot 13, Block 10, West Highlands Addition to Cedar Rapids, situated in Linn County, Iowa * * * subject to four installments of paving tax; * * * for $4300.00 payable at the office of A. F. Dotson & Company, Cedar Rapids, Iowa, as follows: $250.00 on the execution of this agreement, and * * * $4,050.00 and interest * * * as follows, towit: and $350.00 on October 1, 1931, and $45.00 * * * on or before the first day of every month beginning May 1, 1931 until * * * fully paid; * * * Party of the second part shall be entitled to possession April 1, 1931.

"The party of the second part *agrees to pay all taxes* and assessments that may accrue on said property as they become due, or before they become delinquent, including the taxes for the year 1931.

. "It is further agreed that second party *shall keep the buildings and other improvements on said premises in good and reasonable repair;*

. "And that second party *shall not make any material alterations in said premises or create any lien thereon* without the written consent of the said first party. * * * In event second party fails to keep the property '* * * in' reasonable repair, then second party's rights shall be forfeited, etc." (Signed by both parties.) (Italics ours.)

Knolk took possession April 1, 1931. After signing the contract, the vendee entered into an independent oral contract with the plaintiff for the installation of a new plumbing equipment in the bathroom, and the removal of the old. The cost of the new fixtures and labor amounted to $666.28, upon which there was an unpaid balance of $416.28. A mechanic's lien for this amount was duly filed, and this action was commenced to establish a lien therefore against the interests of both the vendor and vendee in the property. The vendee failed to pay the April and May, 1932, installments when due, and also failed to pay the 1931 taxes when they became due or thereafter. Thereupon and on the 6th day of May, 1932, the vendor served the statutory notice of forfeiture of the sale contract upon the vendee because of his failure to pay such monthly installments, and the 1931 taxes before they became due. After the expiration of the thirty days, Barnoske notified the vendee that the contract had been forfeited. The vendees contend that they were required and obligated to install the bathroom fixtures under the terms of the contract; they also contend that they made a good and legal tender of the delinquent installments and taxes within thirty days from the service of notice of forfeiture, and by reason thereof the forfeiture was invalid. :

The appellants contend that they never obligated or required the vendees to install the improvements in question; that the monthly installments and taxes of 1931 were not paid when due; that the contract was forfeited; and that their interest in the property is therefore not subject to plaintiff's mechanic's lien.

■ I. The vendee Knolk was the equitable owner of the real estate; and as such had a right to install such improvements thereon as he desired, and, in reference thereto, was not subject to the control of the vendor. The installation of any improvements on the

premises under a contract with the vendee entitled the contractor to a mechanic's lien against the interests of such vendee in the real estate. Code, section 10270; Knapp v. Baldwin, 213 Iowa 24, 238 N. W. 542; Green v. Saxton, 196 Iowa 1086, 196 N. W. 27.

It is also the settled law in this state that if a vendor, who retains legal title to the property as security, requires or obligates the vendee under the contract of sale, or otherwise, to make the improvements upon the land sold, his interest in the land becomes subject to a mechanic's lien therefor. Veale Lumber Co. v. Brown, 197 Iowa 240, 195 N. W. 248; Kimball Bros. Co. v. Fehleisen, 184 Iowa 1109, 169 N. W. 445; American Trust & Savings Bank v. West, 214 Iowa 568, 243 N. W. 297; Schoeneman Lumber Co. v. Davis, 200 Iowa 873, 205 N. W. 502; Consumers Ind. Co. v. Rozema, 212 Iowa 697, 237 N. W. 433; Knapp v. Baldwin, 213 Iowa 24, 238 N. W. 542.

The rule of law is also well settled in this state that where the improvements are not required to be made by the vendee under the contract of sale, and where no authority to install them is otherwise given by the vendor, to either the vendee or to his contractor, there is no agency or implied authority under which the vendor's interest is subject to a lien therefor.

Although there is no evidence tending to show that the vendor in this case had any knowledge of the vendee's intention to install new bathroom fixtures in the premises, it is claimed by appellee that the vendor had knowledge of the installation thereof. There is no evidence in the record tending to show that the vendor had any knowledge or expectation that his vendee would install a new bathroom equipment in the premises. Such knowledge alone, if it existed, would not, in and of itself, make the vendor or his interest in the property liable therefor.

It is the settled law in this state that mere knowledge of the making of such improvements or the mere expectation by the vendor that the vendee will make them is not sufficient. 18 R. C. L. 897; Knapp v. Baldwin, 213 Iowa 24, 238 N. W. 542; Hunt Hardware Co. v. Herzoff, 196 Iowa 715, 195 N. W. 264; Young v. Swan, 100 Iowa 323, 69 N. W. 566; Beh v. Moore, 124 Iowa 564, 100 N. W. 502; Oregon Lbr. Co. v. Beckleen, 130 Iowa 42, 106 N. W. 260, 6 L. R. A. (N. S.) 485; Cedar Rapids S. & D. Co. v. Dubuque Realty Co.; 195 Iowa 679, 192 N. W. 801; Sheppard v. Messenger, 107 Iowa 717, 77 N. W. 515; Schoeneman Lumber Co. v. Davis, 200 Iowa 873, 205 N. W. 502; Ellis v. Simpson, 199 Iowa 671, 202

N. W. 554; Joyce Lumber Co. v. Wick, 200 Iowa 796, 205 N. W. 476. In Hunt Hardware Co. v. Herzoff, supra, we said:

"Mere knowledge by the owner that a purchaser of real property from him under a contract for a deed, to be executed upon the payment of the purchase price, has placed improvements on the property, is not sufficient to create an implied promise upon his part to pay for such improvements, nor to charge his interest therein with a lien."

In Knapp v. Baldwin, supra, we said:

"It is the repeated pronouncement of this court that knowledge on the part of the vendor that the vendee is making improvements upon the premises described in the real estate contract is not sufficient to give the lien of materialmen priority over the vendor's lien."

■ Appellee claims, however, that the contract of purchase required and obligated him to make the improvements in question. Before the final contract was entered into, there were some negotiations between the vendee and the vendor with reference to the condition of the building and the repairs it might need. The vendor's first price for the property was $4,700. This price was not accepted, and the vendee then offered $4,500 "on condition that the owner put in a new furnace, redecorate living and dining rooms and kitchen," and make a few other repairs not material to this inquiry. This was also refused. Thereupon the vendee made another written offer of $4,300. This offer contains no reference to any conditions requiring the installation of any new fixtures or improvements in the bathroom by any one.

The foregoing negotiations resulted in the execution, on the 16th of March, 1931, of the contract of sale, hereinabove set out as Exhibit 5.

This contract contains, among other things, the following provisions:

"The party of the second part *agrees to pay all taxes and assessments that may accrue* on said property *as they become due or before delinquent,* including the taxes for the year, 1931.

"*And it is further agreed that second party shall keep* the buildings *and other improvements on said premises in good and reasonable repair.* * * *

*"And that said second party shall not make any material al-. terations in said premises, or create any lien thereon without the written consent of said first party.* In event second party fails to *keep* the property \* \*. \* in reasonable. repair, then first party, \* \* \* shall have the right \* \* \* upon serving thirty days notice to declare this contract null and void and second party's rights shall be forfeited and shall utterly cease \* \* \* and terminate and the property \* \* \* shall immediately revert to \* \* \* first party, etc."

All the negotiations had prior to the execution of the contract (Exhibit 5) were merged in the contract of sale.

The *vendee* does not seriously claim that there was anything said by the vendor after the execution of the contract of sale, under which the vendee was authorized or required to make the plumbing repairs in question. Nor is there any evidence that *plaintiff* ever saw Mr. Barnoske, the vendor, or received any orders, directions, or information of any kind from him in reference to the plumbing fixtures. It cannot be said that the new bathroom equipment was installed by plaintiff at the request of the vendor. Nor is there any evidence that the vendor made any oral request or statement to the vendee, from which it can be inferred that he was authorized to make the improvement in question.

The final contract only requires that "the second party shall *keep* the building and other improvements on said premises in good and reasonable repair," etc. The contract does not require the vendee to place the building in repair at the time he purchased it. It simply obligates him to keep it in repair, after he took possession thereof. It is claimed that this provision is sufficient to require and obligate vendee to make the improvements in question, because the old plumbing was out of repair. The only evidence with reference to the condition of plumbing fixtures was that of Knolk and the plaintiff. Knolk said: "*After I got possession* of the property I found that the bath tub was badly rusted and that the toilet had leaked so much that the floor around it had become rotten; \* \* \* and the lavatory had been rusted too." The plaintiff says: "The bath tub was discolored and stained and the rust was showing through the enamel, around the bowl of the toilet it was wet and showed there was a constant dripping from the toilet and the floor had started to rot. The toilet was not in good working order or it would not have

dampened the floor." There is no evidence tending to show that the bathroom fixtures could not have been put in reasonable repair without installing entirely new fixtures. There was no provision in the contract requiring or obliging the vendee to make any material alteration or changes in the bathroom fixtures. On the contrary, it provides that: "The second party *shall not make any material alterations in said premises* or create any lien thereon without the written consent of the first party."

There is no evidence showing that the vendor had any knowledge of vendee's intention to install any new plumbing fixtures in the bathroom. He received no notice from the vendee that they would be installed, and was not present while they were being installed, and he never advised the vendee to make the alteration. The only evidence of appellant's knowledge of these alterations was obtained some time after they had been fully installed. Such knowledge is not sufficient to make his interest in the property subject to a lien therefor.

The provisions of the contract for keeping the premises in reasonably good repair cannot be construed into an agreement authorizing the vendee to install an entirely new bathroom equipment.

Plaintiff's statement shows that his bill for labor was $139.60 for removing the old plumbing and installing new; and $526,68 for new fixtures. Among the items included were: One green closet, $122; one green lavatory, $107.04; one green tub, $106.20; and all other new material necessary for the installation of the bathroom equipment. While there may be evidence that some of the old plumbing fixtures leaked, there is no testimony that they could not be repaired without replacing them with entirely new fixtures. We are therefore constrained to hold that the provision in the contract referring to repairs did not constitute the vendee an agent of the vendors, and did not require or obligate him to install the expensive new bathroom fixtures as "repairs." We think this branch of the case is controlled by the case of Hunt Hardware Co. v. Herzoff, supra, and other cases hereinabove cited.

II. Appellee claims that the contract in question was never forfeited. The record shows that the installment of $45 payable under the contract on October 1, 1931, had not been paid. The evidence shows although the vendee made no payment for the $45 October installment, he did pay the installment of March, 1932. He failed, however, to pay the installments of April and May, 1932,

and failed to pay the taxes of 1931 when they became due and allowed them to become delinquent. Thereupon on May 6, 1932, the vendor appellant caused the statutory thirty days' notice of forfeiture to be served on the vendee, because of his failure to make such payments. The evidence shows that Knolk, the vendee, made a good and sufficient tender of the $45 installments due in April and May, 1932, within the thirty days after the service of the notice of forfeiture. The evidence shows that the first half of the taxes of 1931 had become delinquent, but no tender or offer to pay them was made, by the vendee Knolk, before the expiration of the thirty days' notice of forfeiture. There is some evidence tending to show that after the expiration of the thirty days' notice of forfeiture, the vendee told appellant's attorney that if the vendor would accept the installments then due, that he would pay the delinquent taxes. This cannot constitute *tender* of the payment of the delinquent taxes; but if it could be so construed, it was made too late, as it was made after the thirty days' notice of forfeiture had expired. For the reasons hereinabove expressed, it is our conclusion that the vendee's interest in the property in question had been forfeited.

In addition to the foregoing, the evidence shows that, after the expiration of the notice of forfeiture, the vendee was allowed to remain on the property by paying appellant $40 a month for that privilege, and finally moved out. This may have been a recognition of the forfeiture claimed by appellant, but whether it was or not, a forfeiture was effected by reason of vendee's failure to pay the delinquent taxes prior to the expiration of the thirty days' notice of forfeiture. On his failure so to do, the forfeiture became complete.

Although the appellee had a mechanic's lien against the interest of the vendee in the premises, the effect of a forfeiture of his contract completely divested the vendee of any interest therein. Upon such forfeiture, the legal title became reinvested in the appellant, vendor, and the title then "stood in him, the same as though no contract for a deed had ever been entered into. Necessarily there was nothing left to which the lien of appellee could thereafter attach." Hunt Hardware Co. v. Herzoff, supra.

For the reasons hereinabove expressed, we are constrained to hold that the vendor's interest in the real estate in question is not subject to plaintiff's mechanic's lien. It necessarily follows that the decree of the lower court against appellants must be reversed.

This case is therefore reversed and remanded for a decree in harmony herewith.—Reversed and remanded.

CLAUSSEN, C. J., and STEVENS, MITCHELL, ANDERSON, KINDIG, and ALBERT, JJ., concur.