J. W. Davis, Appellee, v. Albert E. Bunnell et al., Defendants; Avoca Mercantile Company et al., Appellants.
No. 38960.

April 2, 1929.

*Preston & Dillinger*, for appellants.

*V. H. Byers*, for appellee.

Grimm, J.—On the 30th day of June, 1921, Albert E. Bunnell and Matie Bunnell, husband and wife, executed a mortgage to the Citizens Savings Bank of Avoca, Iowa, covering the north  half of the southwest quarter and the southeast quarter of the southwest quarter and the south half of the northwest quarter, all in Section 28, Township 77 north, Range 31 west of the 5th P. M., in Pottawattamie County, covering 200

acres of land. It will be noted that this is a solid body of land, composed of the south half of the northwest quarter and all of the southwest quarter except the 40 acres in the southwest corner of the section. This mortgage was given to secure a series of notes aggregating $17,000, and drawing interest at the rate of 7 per cent per annum. These notes were payable to the Citizens Savings Bank of Avoca, Iowa. The mortgage was duly recorded on the 1st day of July, 1921.

On December 6, 1924, this mortgage and the notes were duly assigned to the plaintiff, Davis, appellee. Prior to the time of the execution of this mortgage, the Bunnells had given two mortgages on this 200-acre tract: one for $10,000, in favor of the Northwestern Mutual Life Insurance Company, and a second mortgage of $19,800, to the Citizens Savings Bank of Avoca, Iowa.

Sometime in 1919, Bunnell purchased the remaining 40 acres of the body of land, being the southwest quarter of the southwest quarter of Section 28, from his mother. The bank advanced him money to help him pay for this 40 acres. His mother received from him $4,000 for the deed, and $1,580 was paid to her as back rent.

About the time of the purchase of this 40 acres of land by Bunnell from his mother, Bunnell, mainly at the instance of the bank, set about to refinance his indebtedness, which involved securing a new and larger first mortgage and an extension of time on his indebtedness to the bank. It is claimed that an oral agreement was then entered into between Bunnell and the bank, by the terms of which the bank would assist Bunnell in securing an increased first mortgage, and would grant Bunnell an extension of time on his indebtedness to the bank, in consideration for which Bunnell was to give the bank a second mortgage for $17,000, to cover the *entire* block of land made up of the original 200 acres of land included in the second mortgage then held by the bank and the 40 acres recently purchased by Bunnell from his mother.

This refinancing was accomplished by procuring a $30,000 first mortgage in favor of the Lincoln Joint Stock Land Bank. In order to do this, the Citizens Savings Bank necessarily canceled its second mortgage then held on the 200 acres of land. The proceeds of the $30,000 mortgage were used, first, in the

payment of the Northwestern Mutual $10,000 mortgage, and the balance was used in canceling the second mortgage held by the bank on the 200 acres. At this time, Bunnell was indebted to the bank in further sums aggregating about $17,000. It appears that the oral agreement alleged to have been entered into by Bunnell and the bank for a mortgage on the entire 240 acres was not attempted to be carried out in detail until June 30, 1921, at which time Bunnell and his wife were called to the bank by one Meitzen, president of the bank, who there personally drew the mortgage in controversy, taking, as he says, the description therefor from the old second mortgage held by the bank on the 200 acres of land. It is claimed it was not discovered by either Bunnell or the bank that the mortgage in controversy did not include in the description the 40-acre tract, until sometime in April, 1925.

On June 27, 1925, the plaintiff, Davis, began this suit against the Bunnells as principal defendants, mortgagors, and the other defendants, who, between September, 1921, and November, 1923, had procured judgments against the Bunnells. It is claimed in the petition that, at the time of the execution of the mortgage, Albert Bunnell was the owner of the entire 240 acres; that the Bunnells were indebted to the bank, and that an oral agreement had been entered into between the bank and the Bunnells that the Bunnells were to execute and deliver to the said bank, in consideration for an extension of time, a mortgage on the entire 240 acres; that the omission of the 40 acres was a matter of mutual mistake of the parties. Plaintiff asked for judgment against the Bunnells for the sum of $20,000 (in round figures), with interest; for the reformation of the mortgage, and that it be decreed to convey the 40 acres; that the judgment be decreed to be a lien upon the entire 240 acres; and that a special execution issue against all of said real estate for the satisfaction of the judgment, and general execution issue for any unsatisfied balance; that the liens of the other defendants be declared to be junior and inferior to the said lien of the plaintiff.

On February 20, 1925, the plaintiff filed an amendment to the petition, alleging, in substance, that, prior to the execution of the mortgage in controversy, the Bunnells were indebted to the plaintiff, through his agent, the bank, for money loaned to them, including the sum of $4,000 loaned them to pay as pur-

chase money for the 40-acre tract omitted from the said mortgage; that the said defendants Bunnell needed and asked for more credit, at or about the time of the execution of said mortgage, and it was orally understood and agreed by and between the said bank, acting for the plaintiff, and the said Bunnells, that an extension of time, as represented by the notes, would be granted, upon condition that the said defendants would make and execute to said bank a mortgage upon the entire 240 acres; that it was intended by the defendants and by the said plaintiff, through his agent, the bank, to include the said 40-acre tract in the mortgage.

: On the same day, February 20, 1925, the court rendered a decree against defaulting defendants, the Bunnells, and certain others of the judgment lien claimants. There was a judgment for $20,000 (in round figures) entered against the Bunnells, and, as against the defaulting defendants, the mortgage in controversy was reformed to convey the 40 acres, and it was decreed to be a lien on the whole 240 acres, and, as against said defaulting defendants, the mortgage was foreclosed.

Prior to that time, on February 16, 1925, the defendants H. Seiffert Lumber Company, Hetzel, and Stender, assignee, appeared and filed an answer. On February 17, 1925, Avoca Mercantile Company filed an answer; but later, an amended and substituted answer was filed by the Avoca Mercantile Company, on April 7, 1925. By this amended answer the Avoca Mercantile Company, after admitting the execution of the mortgage and the priority of the plaintiff's lien on the land described in the mortgage, denies all the other allegations, and for further answer alleges: First, that the plaintiff has a chattel mortgage lien upon other property of the defendants Bunnell, to secure the payment of the notes referred to in the mortgage, and that the property covered by both of said liens is more than sufficient to satisfy all of plaintiff's demands; second, an estoppel is pleaded, based upon the allegation that the Mercantile Company knew of the mortgage as recorded, covering the 200 acres, and knew that Bunnell owned the other 40 acres, and believed that said 40 acres would furnish security for its claim, and, relying thereon, it neglected and refrained from in any manner levying execution upon the personal property or other assets of the defendant Bunnell.

I. Did the trial court err in reforming the mortgage?

On the question of the agreement between the bank and the Bunnells, Meitzen, the president of the bank, was the only witness. The record shows in detail the history of the relations between the bank and the Bunnells, including many of the obligations of the Bunnells and the manner in which the same were secured by mortgages on the 200 acres of land. When the transaction in question arose, Bunnell had on his 200 acres of land a first mortgage for $10,000 to the Northwestern Mutual, and a second mortgage for $19,800 to the bank. He also owed the bank on open account, the exact amount of which is not clearly shown in the record. The time had arrived when Bunnell needed to borrow more money from the bank, and an extension of time on his then obligations to the bank. Meitzen testifies that the matter was gone over in detail between Bunnell and himself, and that finally it was orally agreed between the bank and Bunnell that, in consideration of assistance from the bank in procuring a larger first mortgage on the land and an extension of time by the bank on Bunnell's indebtedness to it, Bunnell would give a mortgage on the entire 240 acres to the bank, to cover a series of notes aggregating $17,000. The testimony shows without dispute that Meitzen, acting on behalf of the bank, first released the second mortgage of $19,800 then held by the bank, and also assisted Bunnell in securing a $30,000 loan from the Lincoln Joint Stock Land Bank; and notes were executed for $17,000, due on demand, with interest from June 30, 1921.

It appears that a considerable period of time, approximately a year and a half, elapsed between the time when the refinancing took place and the mortgage in controversy was executed. The delay is explained by reason of several causes, including the illness, at one time, of Bunnell, and, at another time, of his wife, and pressure of business on the part of the bank. Finally, on demand of Meitzen, and on June 30, 1921, Bunnell and his wife came to the bank. Meitzen prepared the mortgage. He took the description from the old second mortgage held by the bank against the Bunnells, which included only the 200 acres. The mortgage thus drawn was signed and executed by the Bunnells, and placed of record. Meitzen testified that the oral agreement for the mortgage provided for a mortgage on the 240 acres; that

he, in drawing the mortgage, intended to include in it the 240 acres; and that the 40-acre tract was omitted by mistake.

Neither of the Bunnells was a witness on the trial. The record shows that they were then at home on the farm, a short distance from the place of the trial. They had defaulted in the action. The mortgage, as to them, had been reformed and foreclosed. It is significant that the Bunnells defaulted to the action in which reformation of the instrument, to include the 40 acres, was asked.

According, then, to the undisputed evidence in the case, a mistake was made by the scrivener, acting for both the bank and the Bunnells, in drafting the mortgage. The proof on the question satisfies the requirements of the law, and the court rightfully reformed the instrument.

II. As to the estoppel claimed by the defendant the Avoca Mercantile Company, the record shows that it procured two judgments on September 21, 1921, approximately three months after the mortgage in controversy was executed.  There is no definite showing in the record as to when the goods were purchased from the Mercantile Company by the Bunnells. It is fair to assume that the transactions took place before the execution of the mortgage, and that there was no extension of credit to the Bunnells on the basis of his ownership of the 40 acres of land; in fact, it is not claimed that the goods were sold in reliance upon Bunnell's ownership of the 40. It is only claimed that the company refrained from pressing the collection of its judgments because it regarded the 40 acres as of ample value to satisfy the judgments. There were many other judgments on record against the Bunnells in the same county, secured about the time the Mercantile judgments were secured. The record shows that some investigations were made by representatives of the Mercantile Company concerning the collection of its judgments. They must have found a mortgage for $30,000 on the 240 acres, a second mortgage for $17,000 on the 200 acres, a chattel mortgage running to the bank, and many wholly uncollected judgments against the Bunnells. On the whole, we find no estoppel in the case. The defendants, judgment creditors, are not "purchasers," and therefore their rights can rise no higher than the rights of the defendant Bunnell. *Norton, Jewett & Busby v. Williams,*

9 Iowa 528; *Fletcher v. Kelly*, 88 Iowa 475. See, also, *Marker v. Davis*, 200 Iowa 446; *Magnesite Products Co. v. Bensmiller*, 207 Iowa 1303. An estoppel has not been proven. The oral agreement for the execution and delivery of a mortgage on the 240 acres, for a consideration, has been proven, in accordance with the requirements of law.

The case is—*Affirmed*.

ALBERT, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.