FILED

08/26/2020

Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 19, 2020 Session[1]

## SCOTT TRENT ET AL. v. MOUNTAIN COMMERCE BANK ET AL.

Appeal by Permission from the Court of Appeals
Chancery Court for Hamblen County
No. 2017-CV-460     Jean A. Stanley, Judge[2]

No. E2018-01874-SC-R11-CV

The issue presented is whether a quitclaim deed should be equitably reformed when reformation would benefit parties with constructive notice of a title defect and harm the rights of creditors with recorded judgment liens. A husband and wife quitclaimed parcels of real property to limited partnerships. The wife was omitted as a grantor on one of the quitclaim deeds even though she and her husband owned the property as tenants by the entirety. Two banks obtained judgments against the husband and wife and recorded the judgments. The property was later sold, and the purchasers and their lender discovered that the property was subject to the wife's retained ownership interest and the banks' recorded judgment liens. To remedy the error, the husband and wife signed a quitclaim deed of correction, referencing the wife's omission as a grantor on the previous quitclaim deed. The purchasers and their lender then filed this declaratory judgment action asking the trial court to hold, based on mutual mistake, that the corrected quitclaim deed reformed the original quitclaim deed, vested ownership in the limited partnership, divested the wife's interest, and removed the banks' judgment liens. The trial court denied reformation, finding that there was no mutual mistake by the husband and the limited partnership who signed the original quitclaim deed. The Court of Appeals affirmed. After considering the equities of the parties, we decline to grant reformation of the quitclaim deed because doing so would deprive the banks of their recorded judgment liens and benefit the purchasers and their lender who acquired the property with constructive notice of the wife's remaining interest in the property and the banks' recorded judgment liens. Thus, we need not decide whether reformation is an available remedy to correct a quitclaim deed by adding an omitted grantor. We affirm the judgments of the trial court and the Court of Appeals, based on different reasoning.

---

[1] We heard oral argument through videoconference under this Court's emergency Order of April 24, 2020, restricting court proceedings because of the COVID-19 pandemic.

[2] Sitting by interchange.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed; Judgment of the Trial Court Affirmed**

SHARON G. LEE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

William E. Phillips, Sr., Rogersville, Tennessee, for the appellants, Scott Trent, Ted C. Trent, Civis Bank, and William E. Phillips, Sr., Trustee.

Steven C. Huret, Kingsport, Tennessee, for the appellee, First Community Bank, N.A.

Edward J. Shultz, Knoxville, Tennessee, for the appellee, Mountain Commerce Bank.

## OPINION

### I.

Adren S. Greene and his wife, Pamela W. Greene, defaulted on real estate development loans from Mountain Commerce Bank and People's Community Bank. In March 2010, Mr. and Mrs. Greene, facing possible foreclosure and deficiency actions, asked an attorney to prepare quitclaim deeds transferring other property they owned to limited partnerships in which the Greenes had an interest. The attorney drafted six quitclaim deeds conveying ten parcels of property to either Real Estate Holdings of East Tennessee, L.P. ("Real Estate Holdings")[3] or Real Estate Investments of East Tennessee, L.P.

On March 10, 2010, Mr. and Mrs. Greene signed the quitclaim deeds at their attorney's office, believing that they had conveyed all of their interest in the ten parcels of property. The Greenes did not review the quitclaim deeds before signing them, trusting that the quitclaim deeds had been properly drafted. Mr. and Mrs. Greene owned property on West First North Street in Morristown ("the Property") as tenants by the entirety. Yet Mrs. Greene was omitted as a grantor on the quitclaim deed transferring the Property to Real Estate Holdings; only Mr. Greene signed the quitclaim deed, which was recorded on March 18, 2010.

Mountain Commerce Bank and People's Community Bank separately foreclosed on development property owned by the Greenes and sued them for the deficiency balances. In

---

[3] The general partner of Real Estate Holdings was ASG Holdings Management, Inc., whose president was Mr. Greene's brother. Mr. Greene was vice president of ASG Holdings Management, Inc. The limited partners of Real Estate Holdings were Mr. and Mrs. Greene.

January 2012, an agreed judgment was entered against Mr. and Mrs. Greene in favor of Mountain Commerce Bank; the judgment was recorded in the Hamblen County Register of Deeds office on October 22, 2013. In August 2012, an agreed order of judgment was entered against Mr. and Mrs. Greene in favor of People's Community Bank, a division of First Community Bank; the judgment was recorded on March 28, 2013, in the Hamblen County Register of Deeds office.

On August 30, 2016, Scott Trent and Ted C. Trent bought the Property from Real Estate Holdings. Civis Bank financed the purchase. The Trents and their wives signed a Deed of Trust to William E. Phillips, Sr., as Trustee for Civis Bank. Sometime in 2017, the Trents and Civis Bank learned that Mrs. Greene retained an ownership interest in the Property and that Mountain Commerce Bank and First Community Bank, N.A.[4] ("the Banks") had recorded judgment liens against the Property. On March 22, 2017, Mr. and Mrs. Greene signed a corrected quitclaim deed to Real Estate Holdings, which was recorded on March 29, 2017, in the Hamblen County Register of Deeds office. The corrected quitclaim deed explained that Mrs. Greene had intended to convey her interest in the Property to Real Estate Holdings under the 2010 quitclaim deed but had been omitted as a grantor.

In September 2017, the Trents, along with Civis Bank and Mr. Phillips as Trustee for Civis Bank ("the Petitioners"), petitioned the Hamblen County Chancery Court for a declaratory judgment that the corrected quitclaim deed reformed the original quitclaim deed, vested ownership of the Property in the limited partnership as of the date of the original quitclaim deed, divested Mrs. Greene's interest, and removed the judgment liens. The declaratory judgment action named the Banks as respondents and sought a reformation of the original quitclaim deed based on mutual mistake of the parties.

After a September 10, 2018 hearing, the trial court declined to reform the 2010 quitclaim deed to add Mrs. Greene as a grantor because she had not been a party to the quitclaim deed and thus there had been no mutual mistake by the parties. The Court of Appeals affirmed, reasoning that because Mr. Greene and Real Estate Holdings intended that Mr. Greene would convey his interest in the Property to Real Estate Holdings, there had been no mutual mistake between the parties to the quitclaim deed—Mr. Greene and Real Estate Holdings. We granted the Petitioners' application for review.

---

[4] First Community Bank, according to its brief, operates as People's Community Bank in Tennessee.

## II.

The material facts here are undisputed, and so the determination of the priority of rights among lienholders is solely a question of law. *ABN AMRO Mortg. Grp., Inc. v. S. Sec. Fed. Credit Union*, 372 S.W.3d 121, 126 (Tenn. Ct. App. 2011) (citing *Bankers Trust Co. v. Collins*, 124 S.W.3d 576, 578 (Tenn. Ct. App. 2003); *ATS, Inc. v. Kent*, 27 S.W.3d 923, 924 (Tenn. Ct. App. 1998)); *Holiday Hospitality Franchising, Inc. v. States Res., Inc.*, 232 S.W.3d 41, 47 (Tenn. Ct. App. 2006) (citations omitted). We review the trial court's ruling on questions of law de novo with no presumption of correctness. *ABN AMRO*, 372 S.W.3d at 126 (citing *ATS, Inc.*, 27 S.W.3d at 924); *Holiday Hospitality*, 232 S.W.3d at 47 (citation omitted).

The 2010 quitclaim deed's omission of Mrs. Greene as a grantor posed a problem because Mr. and Mrs. Greene owned the Property as tenants by the entirety. Only married couples can own property as tenants by the entirety because the tenancy is "based on the concept that those who are married are not separate persons; rather, they 'are but one person.'" *Bryant v. Bryant*, 522 S.W.3d 392, 400 (Tenn. 2017) (citations omitted). Under a tenancy by the entirety, after the death of one spouse the surviving spouse owns the property. *Id.* The surviving spouse does not acquire any new or further interest in the property after the other spouse's death because the surviving spouse always had that ownership interest. *Id.* When Mr. Greene conveyed his interest in the Property to Real Estate Holdings, he could not legally convey Mrs. Greene's ownership interest. *See Robinson v. Trousdale Cnty.*, 516 S.W.2d 626, 632 (Tenn. 1974) (explaining that under tenancy by the entirety, one spouse can convey only his or her survivorship interest without the other spouse's consent, and "[a]ny unilateral attempt will be wholly . . . void at the instance of the [other spouse] and any prospective purchaser, transferee, lessee, mortgagee and the like will act at his peril"). Thus, the 2010 quitclaim deed conveyed to Real Estate Holdings only Mr. Greene's interest in the Property. Mrs. Greene retained her interest, which meant that if Mrs. Greene survived her husband, she would own the entire interest in the Property. *See Bryant*, 522 S.W.3d at 400.

The Banks' judgment liens attached to Mrs. Greene's remaining interest in the Property upon recordation. *See* Tenn. Code Ann. § 25-5-101(b)(1) (2017); Tenn. Code Ann. § 66-26-101 (2015).[5] In short, the Trents acquired the Property subject to Mrs.

---

[5] "[J]udgments . . . obtained . . . in any court of record . . . of this state shall be liens upon the debtor's land from the time a certified copy of the judgment . . . shall be registered in the lien book in the register's office of the county where the land is located." Tenn. Code Ann. § 25-5-101(b)(1). Tennessee Code Annotated section 66-26-101 provides that judgments "shall have effect between the parties to the same . . . without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided." Tenn. Code Ann. § 66-26-101.

Greene's interest and the Banks' judgment liens. Thus, the Petitioners sought to have the quitclaim deed reformed to vest Real Estate Holdings with full ownership of the Property as of March 10, 2010, and free from the Banks' recorded judgment liens.

Courts have jurisdiction under Tennessee law to reform written instruments to accurately reflect the parties' agreement. *Battle v. Claiborne*, 180 S.W. 584, 587 (Tenn. 1915) (citation omitted); *Sikora v. Vanderploeg*, 212 S.W.3d 277, 287 (Tenn. Ct. App. 2006) (citing *Greer v. J.T. Fargason Grocer Co.*, 77 S.W.2d 443, 443–44 (Tenn. 1935); *Tenn. Valley Iron & R.R. Co. v. Patterson*, 14 S.W.2d 726, 727 (Tenn. 1929)). Reformation is an equitable remedy "by which courts may correct a mistake in a writing 'so that it fully and accurately reflects the agreement of the parties.'" *Lane v. Spriggs*, 71 S.W.3d 286, 289 (Tenn. Ct. App. 2001) (quoting 22 Tenn. Jur. *Rescission, Cancellation and Reformation* § 46 (1999)).

A court may reform an instrument to correct a mutual mistake. *Sikora*, 212 S.W.3d at 286 (citing *Alexander v. Shapard*, 240 S.W. 287, 291–94 (Tenn. 1922); *Cromwell v. Winchester*, 39 Tenn. (2 Head) 389, 390–91 (1859)); *Lane*, 71 S.W.3d at 289 (citing *Williams v. Botts*, 3 S.W.3d 508, 509 (Tenn. Ct. App. 1999)). Mutual mistake "is a mistake common to all the parties to the written contract or the instrument or in other words it is a mistake of all the parties laboring under the same misconception." *Collier v. Walls*, 369 S.W.2d 747, 760 (Tenn. Ct. App. 1962). A party seeking to reform a contract because of mutual mistake must show by clear and convincing evidence that:

> (1) the parties reached a prior agreement regarding some aspect of the bargain; (2) they intended the prior agreement to be included in the written contract; (3) the written contract materially differs from the prior agreement; and (4) the variation between the prior agreement and the written contract is not the result of gross negligence on the part of the party seeking reformation.

*Sikora*, 212 S.W.3d at 287–88 (footnotes omitted) (citing 7 Corbin on Contracts § 28.45 at 283; 27 Williston on Contracts §§ 70:19 at 256, 70:23 at 264–65).

The trial court and the Court of Appeals focused on whether reformation may be used to reform a quitclaim deed to add a grantor omitted because of mutual mistake. We take a different path. We need not decide whether a missing grantor can be added to a quitclaim deed because reformation, even if available as a remedy, is not appropriate here based on the equities of the parties.

Reformation, being an equitable remedy, requires us to consider the equities of the parties. *See* 27 Williston on Contracts § 70:24 (4th ed.) (July 2020 Update) (footnotes omitted) ("The court has equitable discretion to grant reformation if it finds that to be in

the interests of justice. Since the remedy of reformation is equitable in nature, a court has the discretion to withhold it, even if it would otherwise be appropriate, on grounds that have traditionally justified courts of equity in withholding relief. The major limit to the traditional exercise of equitable discretion is reasonableness.").

A court should not reform a contract when doing so would unfairly affect the rights of innocent third parties. Restatement (First) of Contracts § 504 (June 2020 Update); 21 Steven W. Feldman, Tennessee Practice Series, Contract Law and Practice § 6:69 (May 2019 Update) ("Courts will disallow reformation with intervening rights of innocent third parties who would be unfairly affected by the remedy."). Thus, reformation should not be granted when it would defeat the rights of third parties who acquired an interest in the property between the time of the execution of the original instrument and the execution of the reforming instrument. *See Johnson v. Johnson*, 67 Tenn. 261, 263 (1874) (granting reformation after noting that there were no creditors or purchasers for value without notice that could object to reformation); *Gibson v. Flynn*, No. 88-120-II, 1988 WL 119257, at *3 (Tenn. Ct. App. Nov. 10, 1988) ("It is an almost universal rule of equity not to grant relief by way of reformation to the injury of innocent third persons such as bona fide purchasers, lienholders, and others who without notice have acquired intervening or vested rights . . . ." (quoting *Crahane v. Swan*, 318 P.2d 942, 945 (Ore. 1957))).

Here, reformation of the 2010 quitclaim deed would deprive the Banks of their judgment liens against the Property. The Banks protected their interests by obtaining judgments and recording their liens in the Hamblen County Register of Deeds office after Mr. Greene signed the 2010 quitclaim deed and before the execution of the 2017 corrected quitclaim deed. *See, e.g., In re Cunningham*, 48 B.R. 509, 512 (Bankr. M.D. Tenn. 1985) (stating that under Tennessee law, reformation will not be granted "where third parties have acquired an interest in real property omitted from a deed without notice of the original grantee's adverse claim"); *In re Hunt*, 18 B.R. 504, 506 (Bankr. E.D. Tenn. 1982) (citation omitted) ("Absent the intervening rights of others, a court of equity would reform the instrument under the facts of this case. Other rights have intervened, however, and reformation cannot be granted."); *Needham v. Caldwell*, 154 S.W.2d 535, 538 (Tenn. Ct. App. 1941) (stating that an instrument may be reformed based on mutual mistake "except as the rights of third parties may prevent" (citation omitted)); *but see Minton v. Long*, 19 S.W.3d 231, 241 (Tenn. Ct. App. 1999) (stating that reformation will not be granted "if it affects intervening rights of third persons *who actually and justifiably rely upon recorded instruments*" (emphasis added) (citing *M.R. Bldg. Corp. v. Bayou Utils., Inc.*, 637 So.2d 614, 617 (La. Ct. App. 1994))). Courts in other states agree that the equitable remedy of reformation should not be granted to the detriment of the intervening rights of third parties. *See, e.g., Sky Harbor, Inc. v. R.S. Jenner*, 435 P.2d 894, 897 (Colo. 1968) ("[R]eformation will not lie to the prejudice of a judgment creditor without notice who has a valid lien upon disputed property." (citation omitted)); *Smith v. Pattishall*, 176 So. 568, 572 (Fla. 1937)

(citation omitted) (noting that the equitable rights of third parties such as judgment creditors may prevent reformation); *Adams v. Smith*, 6 La. App. 187, 191 (La. Ct. App. 1927) (stating that the court could correct an error in the property description unless the correction would prejudice third parties who had "acquired rights in the meantime"); *Lowery v. Wilson*, 200 S.E. 861, 864 (N.C. 1939) (stating that reformation of a mortgage "cannot affect priority of a judgment lien acquired subsequent to execution of a mortgage, but prior to the correction" and that "[t]he lien of a judgment creditor stands upon the precise footing as that of a purchaser in good faith" (citation omitted)); *Alkas v. United Sav. Ass'n of Texas, Inc.*, 672 S.W.2d 852, 859 (Tex. Ct. App. 1984) (citation omitted) (stating that the rights of a subsequent lienholder who did not have notice of a prior mortgage are to be adjudicated in a reformation action); *but see Davis v. Bunnell*, 225 N.W. 6, 9 (Iowa 1929) (citations omitted) (observing that judgment creditors do not have the same rights as purchasers in an action for reformation); *Gurske v. Strate*, 87 N.W.2d 703, 705 (Neb. 1958) ("The equity of reformation is superior to the rights of general creditors."); Restatement (Second) of Contracts § 155 cmt. f, illus. 9 (June 2020 Update) (stating that judgment creditors are not protected from reformation like innocent purchasers for value because a judgment creditor "is not a good faith purchaser or other third party taking an interest in property in a voluntary transaction").

The Petitioners rely on *Holiday Hospitality* for the proposition that the rights of a judgment lien creditor are inferior to those of the deed holder because the judgment creditor merely files its lien in the appropriate office and advances nothing of value in reliance on record notice. *Holiday Hospitality*, 232 S.W.3d at 53. But *Holiday Hospitality* is not on point because it involved the priority of judgment lien creditors and the reinstatement of a deed of trust that had been mistakenly released. *Id.* at 47. The Court of Appeals' analysis was based on the standard for canceling the mistaken release of a trust deed rather than reformation. *Id.* at 52.

The Banks protected their interests, but the Trents failed to do so. The Trents bought the Property with constructive notice of the defect in the title and of the Banks' liens, and as such, were not bona fide purchasers for value. *See Henderson v. Lawrence*, 369 S.W.2d 553, 556 (Tenn. 1963) (noting that a bona fide "purchaser is one who buys for a valuable consideration without knowledge or notice of facts material to the title" (citing *Otis v. Payne*, 8 S.W. 848, 850 (Tenn. 1888); *Hewgley v. Gen. Motors Acceptance Corp.*, 286 S.W.2d 355, 359 (Tenn. Ct. App. 1955))); *Wallace v. Chase*, No. W1999-01987-COA-R3-CV, 2001 WL 394872, at *3 (Tenn. Ct. App. Apr. 17, 2001) (stating that a bona fide purchaser "must have (1) purchased the property with value; (2) taken the property without notice; (3) taken the property in good faith; and (4) would be prejudiced by reformation" (citing 76 C.J.S. Reformation of Instruments § 58 (1994))); *Black v. Pettigrew*, 270 S.W.2d 196, 201 (Tenn. Ct. App. 1953) (finding that a party's trust deed was a valid lien because she was "an innocent purchaser for value without notice of any defects in the title").

Constructive notice is "implied or imputed by operation of law and arises as a result of the legal act of recording an instrument under a statute by which recordation has the effect of constructive notice." *Blevins v. Johnson Cnty.*, 746 S.W.2d 678, 682–83 (Tenn. 1988). All recorded instruments such as deeds and judgments "shall be notice to all the world from the time they are noted for registration, . . . and shall take effect from such time." Tenn. Code Ann. § 66-26-102 (2015). The warranty deed conveying the Property to Mr. and Mrs. Greene as tenants by the entirety was recorded in December 2007; Mr. Greene's 2010 quitclaim deed was recorded in March 2010; the Banks' judgment liens against the Greenes were recorded in March 2013 and October 2013; and the quitclaim deed of correction was recorded in March 2017. "The object of registration is to give notice to creditors and subsequent purchasers." *Blevins*, 746 S.W.2d at 684 (quoting *Moore v. Cole*, 289 S.W.2d 695, 698 (Tenn. 1956)). By statute, the Petitioners had notice of Mrs. Greene's ownership interest and the judgment liens when they acquired an interest in the Property.

Equity does not permit us to correct a mistake—to the detriment of the Banks—that the Petitioners could have avoided with reasonable diligence. *See Trigg v. Read*, 24 Tenn. (5 Hum.) 529, 541 (1845) (stating that equity will not grant relief to a party who by reasonable diligence could discover the material facts); *Bank of N.Y. Mellon v. Goodman*, No. M2013-01372-COA-R3-CV, 2014 WL 1516329, at *11 (Tenn. Ct. App. Apr. 16, 2014) (denying relief for a deed of trust mistakenly recorded in the wrong county because a subsequent judgment creditor with properly recorded judgment liens should not be penalized because of mistakes that "could have been avoided with just a little effort"); *Trustmark Nat'l Bank v. Deutsche Bank Nat'l Trust Co.*, No. W2009-01658-COA-R3-CV, 2010 WL 3269978, at *14 (Tenn. Ct. App. Aug. 19, 2010) ("[A] party's failure to protect its interests despite the opportunity and ability to do so is yet another factor courts should consider when weighing the equities between the parties."); *Bankers Trust Co. v. Collins*, 124 S.W.3d 576, 579 (Tenn. Ct. App. 2003) (citing *Leeper v. Cook*, 688 S.W.2d 94, 96 (Tenn. Ct. App. 1985)) (noting that generally a court will not intervene to help a party that has failed to protect its own interest).

### III.

In sum, after considering the equities of the parties, we find that the Petitioners are not entitled to reformation of the 2010 quitclaim deed. Reformation would work to the detriment of the Banks by effectively extinguishing their recorded judgment liens and would benefit the Petitioners who had constructive notice of Mrs. Greene's interest in the Property and the Banks' judgment liens. Although on different grounds, we affirm the judgment of the trial court and the judgment of the Court of Appeals denying the relief sought by the Petitioners. The costs of this appeal are taxed to Scott Trent, Ted C. Trent,

Civis Bank, and William E. Phillips, Sr., as Trustee, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE